[No. D009001. Fourth Dist., Div. One. May 18, 1989.]

CALIFORNIA COASTAL COMMISSION et al., Petitioners, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; A. W. HAM, JR., Real Party in Interest.

COUNSEL

John K. Van de Kamp, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Peter H. Kaufman, Deputy Attorney General, for Petitioners.

No appearance for Respondent.

Richard A. Heller, Eric. T. Lodge and Lodge & Heller for Real Party in Interest.

Ronald A. Zumbrun, Edward J. Connor, Jr., and John M. Groen as Amici Curiae on behalf of Respondent and Real Party in Interest.

OPINION

**WIENER, Acting P. J.**—In April 1985 the California Coastal Commission (Commission) approved the demolition and rebuilding of A. W. Ham, Jr.'s, beach front residence in Del Mar, provided Ham dedicate an easement for public access across a strip of beach in front of his home. (Pub. Resources Code, § 30212.) Ham complied with the condition, the Commission issued the permit, and Ham completed his project.

In July 1988 Ham sued the Commission and the State of California (collectively the State) for inverse condemnation seeking $1 million in damages. ■ ■■■ ■■■ He alleged the permit condition requiring dedication of a public access easement amounted to an unconstitutional taking of private property without compensation.[1] The State's demurrer was overruled. It now seeks extraordinary relief requesting an order directing the trial court to sustain the demurrer.

---

[1] As in all cases reviewing the propriety of a demurrer, we assume the truth of the pleaded allegations. (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 8.)9, 610 P.2d 1330, 9 A.L.R.4th 314].)

## DISCUSSION

The State contends that following an adverse Commission decision, the aggrieved property owner must file a petition for writ of administrative mandate (Code Civ. Proc., § 1094.5) within 60 days (see Pub. Resources Code, § 30801) to challenge the validity of the Commission action. Where judicial review is not sought and the administrative decision becomes final, application of traditional principles of res judicata and/or collateral estoppel require that the property owner be precluded from relitigating the validity of the Commission decision or seeking alternative forms of relief in a different proceeding. Because Ham could have filed an administrative mandate action asserting the unconstitutionality of the Commission's decision to require the dedication of a public easement without paying compensation, the State argues its demurrer to this inverse condemnation pleading should have been sustained. In response, Ham contends the recent United States Supreme Court decision in *First Lutheran Church* v. *Los Angeles County* (1987) 482 U.S. 304 [96 L.Ed.2d 250, 107 S.Ct. 2378] requires that he be allowed to bring an inverse condemnation action even though he did not challenge the Commission's decision in a mandate proceeding.

Our resolution of these competing contentions begins with a historical perspective. As early as 1944 the California Supreme Court articulated the rule that a party's failure to seek judicial review of an administrative agency determination would prevent the party from later challenging the merits of that determination in a collateral proceeding. (*Stockton* v. *Department of Employment* (1944) 25 Cal.2d 264, 267-268 [153 P.2d 741].) This principle has been repeatedly restated by both the Supreme Court and the courts of appeal and applied in a variety of contexts, including cases involving the Coastal Commission. (See, e.g., *Monroe* v. *Trustees of the California State Colleges* (1971) 6 Cal.3d 399, 405-406 [99 Cal.Rptr. 129, 491 P.2d 1105]; *Knickerbocker* v. *City of Stockton* (1988) 199 Cal.App.3d 235, 243-244 [244 Cal.Rptr. 764]; *Walter H. Leimert Co.* v. *California Coastal Com.* (1983) 149 Cal.App.3d 222, 233 [196 Cal.Rptr. 739]; *Briggs* v. *State of California* ex rel. *Dept. Parks & Recreation* (1979) 98 Cal.App.3d 190, 196, fn. 3 [159 Cal.Rptr. 390] (also a Coastal Commission case); *DeCelle* v. *City of Alameda* (1963) 221 Cal.App.2d 528, 535 [34 Cal.Rptr. 597]; see also *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 484 [131 Cal.Rptr. 90, 551 P.2d 410].) As the court explained recently in *Knickerbocker,* "[S]ome of plaintiff's causes of action involve issues previously litigated and decided adversely to him. Those causes of action are barred by his failure to seek review of the Commission's determination. . . . In short, plaintiff is bound by the Commission's deter-

mination and to the extent that his causes of action are inconsistent with that determination, they are fatally flawed." (199 Cal.App.3d at p. 244.)

Prior to the California Supreme Court's decision in *Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25],[2] it was unclear in California the extent to which inverse condemnation damages could be recovered for a "regulatory taking," i.e., a governmental regulation which exceeded the police power to the extent it allowed for the taking of private property without payment of fair compensation. Nonetheless, where an alleged regulatory taking was the result of actions by an administrative agency, the accepted means of challenging the action was to file a petition for writ of administrative mandate (Code Civ. Proc., § 1094.5) joined with a claim for inverse condemnation. (See generally *State of California* v. *Superior Court* (*Veta*) (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Candlestick Properties, Inc.* v. *San Francisco Bay Conservation etc. Com.* (1970) 11 Cal.App.3d 557, 562 [89 Cal.Rptr. 897].) Indeed in *Agins*, the Supreme Court described *Veta* as holding that "insofar as the challenge was to the constitutionality of the act's *application* to the lands of the complaining parties, we concluded that the proper and sole remedy was administrative mandamus." (24 Cal.3d at p. 273.) Thus, *Veta* must be read as establishing as early as 1974 that an administrative mandate action was a necessary procedural predicate to seeking inverse condemnation damages based on a regulatory taking accomplished by an administrative agency.

In 1979 the California Supreme Court decided *Agins* v. *City of Tiburon, supra,* 24 Cal.3d 266. The court held that, while an aggrieved property owner could attempt to invalidate a land use regulation or the manner in which it is applied to his property through an action for declaratory relief or administrative mandamus by establishing that it amounted to a taking of private property without compensation, he could not recover damages on a theory of inverse condemnation measured from the first date of the alleged taking. (*Id.* at pp. 276-277.) A public entity thus was not required to compensate a landowner for a regulatory taking until two requirements were satisfied: (1) the entity's action was determined to be excessive in an action for declaratory relief or administrative mandate, and (2) the government thereafter continued the taking. In other words, damages were not available for the "temporary taking" that existed pending final determination of the matter. (See *First Lutheran Church* v. *Los Angeles County, supra,* 482 U.S. at pp. 308-309 [96 L.Ed.2d at pp. 259-260, 107 S.Ct. at p. 2382].)[3]

---

[2] Affirmed, *Agins* v. *Tiburon* (1980) 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138].

[3] In a second portion of the *Agins* opinion, the court rejected the landowner's claim that the zoning ordinance at issue in the case constituted a taking of private property because it deprived him of substantially all reasonable use of his property. (24 Cal.3d at p. 277.)

■ In 1987, the United States Supreme Court overruled *Agins* in *First Lutheran,* holding the Fifth and Fourteenth Amendments to the United States Constitution required governmental entities to compensate property owners whose property is subject to a temporary regulatory taking. (*First Lutheran, supra,* 482 U.S. at pp. 317-322 [96 L.Ed.2d at pp. 265-268, 107 S.Ct. at pp. 2387-2389].) Procedurally, the court suggested, a property owner cannot be forced to await the favorable conclusion of a declaratory relief or mandate action challenging the validity of the regulation before being entitled to bring a claim for inverse condemnation.

■ Less than three weeks after filing the *First Lutheran* decision, the Supreme Court decided *Nollan* v. *California Coastal Commission* (1987) 483 U.S. 825 [97 L.Ed.2d 677, 107 S.Ct. 3141]. In *Nollan,* the Commission granted a conditional building permit quite similar to that issued in this case. The property owner challenged the condition by filing a petition for writ of administrative mandate. The Supreme Court held that the condition requiring the dedication of a lateral public access easement constituted a taking requiring compensation. (*Id.* at pp. 838-841 [97 L.Ed.2d at pp. 690-692, 107 S.Ct. at pp. 3149-3150].)

■ It is in light of these latter two decisions that Ham filed this inverse condemnation action challenging the Commission's permit decision and seeking damages. According to Ham, *Nollan* establishes that the condition attached to his building permit constituted a "taking" within the meaning of the Fifth Amendment[4] and *First Lutheran* establishes that he is entitled not only to invalidation of the condition but also to damages measured from the date of the taking, i.e., the date the Commission granted the conditional permit.

As noted above, the State contends that Ham is foreclosed from challenging the validity of the conditional permit and collecting inverse condemnation damages because he failed to file a petition for writ of administrative mandate within 60 days of the Commission decision. Because that decision is now final, the State asserts it is res judicata on any claim for inverse condemnation damages. Ham responds citing the *First Lutheran* decision as mandating that a property owner be allowed to challenge the validity of a regulatory taking in an inverse condemnation action. He therefore argues his claim is governed by the five-year statute of limitations applicable to inverse condemnation causes of action. (See *Baker* v. *Burbank-Glendale-*

---

[4] As noted earlier (*ante,* fn. 1), for purposes of discussion we assume that the conditional use permit in issue here would also constitute a taking within the meaning of the Fifth Amendment.

*Pasadena Airport Authority* (1985) 39 Cal.3d 862, 867 [218 Cal.Rptr. 293, 705 P.2d 866].)

As we read it, *First Lutheran* addressed a relatively narrow issue. Under the *Agins* rule, a property owner adversely affected by an excessive land use regulation had only one remedy: sue to invalidate the regulation. If the governmental entity ceased the regulatory action after it was declared invalid, any damages suffered by the property owner were noncompensable. In other words, the owner could not state a cause of action for inverse condemnation based on a temporary taking which ceased after a court declared the regulation excessive. *First Lutheran* overruled *Agins,* concluding that the *Agins* rule was unconstitutional because it allowed the government to temporarily take private property without compensation. In that sense, the Supreme Court held that an inverse condemnation remedy for a temporary taking was constitutionally mandated. *First Lutheran* says nothing, however, about when such a suit must be filed, nor does it purport to address the long-standing California rule regarding the res judicata effect of a final administrative decision as to which an aggrieved party has elected not to seek judicial review. (See discussion *ante,* at p. 1493.)

Quite clearly, a property owner seeking to recover on an inverse condemnation claim against the Commission in a case such as this must first establish the invalidity of the condition the Commission sought to impose. An administrative mandate proceeding provides the proper vehicle for such a challenge. Even in the post-*First Lutheran* world, requiring that an inverse condemnation claim be joined with an administrative mandate action filed within 60 days after the Commission decision becomes final serves the salutary purpose of promptly alerting the Commission that its decision is being questioned and that the State may be liable for inverse condemnation damages. We are aware of nothing which would prohibit the Commission, knowing of such a challenge, from temporarily staying enforcement of a challenged condition in order to mitigate the potential damages. Were the rule as Ham proposes, a property owner could delay nearly five years until the statute of limitations for an inverse condemnation action had almost expired, simply allowing his damages to accrue in the interim. In given cases and certainly in the aggregate, the financial burden on the state could be overwhelming.

We are not persuaded to reach a different result because the 60-day period provided by Public Resources Code section 30801 is relatively short as limitations periods go. ▆▆▆ As we view it, section 30801 operates less as a limitations period and more as a time limit for seeking review of the

ruling of another tribunal. (Compare Cal. Rules of Court, rule 2, providing for a 60-day period within which to file a notice of appeal.) Where review is sought of a Commission decision, there is no question when the 60-day period begins to run. The property owner has no need to "discover" anything. Property owners are often represented at Commission hearings by counsel or other knowledgable persons. In any event, there is no significant impediment to their obtaining prompt advice as to the filing of a writ petition. ■■ ■■ ■■ ■■ ■ In short, the Legislature had every reason to conclude that 60 days provides ample time for a property owner to decide whether to challenge an adverse Commission decision.[5]

■■ Ham suggests that given the state of the law in 1985, it would have been futile to file an administrative mandate action and, accordingly, he should not now be precluded from bringing this action for inverse condemnation. We disagree with both his premise and his conclusion. In 1985, *Agins* quite clearly prohibited a California landowner from recovering damages for a temporary regulatory taking. Just as clearly, however, the United States Supreme Court had on three occasions agreed to hear cases challenging the *Agins* rule but in the course of deciding the cases encountered procedural obstacles which precluded reaching the merits of the challenge. (See *Williamson Planning Comm'n* v. *Hamilton Bank* (1985) 473 U.S. 172, 185 [87 L.Ed.2d 126, 138, 105 S.Ct. 3108]; *San Diego Gas & Electric Co.* v. *San Diego* (1981) 450 U.S. 621, 630, 633 [67 L.Ed.2d 551, 559, 561, 101 S.Ct. 1287]; *Agins* v. *Tiburon, supra,* 447 U.S. 255, 263 [65 L.Ed.2d at pp. 113-114].) Even so, four justices dissented in *San Diego Gas & Electric* expressly disagreeing with *Agins* (see 450 U.S. at pp. 660-661 [67 L.Ed.2d at pp. 578-579]) and then-Justice Rehnquist's concurring opinion specifically noted he "would have little difficulty in agreeing with much of what is said in the dissenting opinion" if he believed the issue were properly presented (450 U.S. at pp. 633-634 [67 L.Ed.2d at pp. 561-562]). Given this expression of opinion from five justices of the United States Supreme Court four years before the Commission's decision in this case, it cannot fairly be maintained that the mere existence of *Agins* made a challenge to its holding "futile." Beyond that, however, the *Agins* rule only precluded the recovery of dam-

---

[5] Public Resources Code section 30800 recites traditional boilerplate that "[t]he provisions of this chapter shall be in addition to any other remedies available at law." Ham argues this section is inconsistent with a conclusion making administrative mandate the exclusive remedy for an unconstitutional taking. We have cautiously resisted characterizing this as an "exclusive remedy" issue, preferring to treat it as involving the res judicata effect of a final administrative decision. Section 30801 did not eliminate any prior remedies available to aggrieved landowners and thus section 30800 is not implicated. Rather, long-standing principles of res judicata apply to affect the timing of the additional remedies. We do not discern in section 30800 any legislative intent to abrogate this well-settled doctrine.

ages for a temporary taking. A property owner prevailing in an administrative mandate action against the Commission would necessarily be entitled to an invalidation of the challenged permit condition. Thus, it can hardly be said that Ham had no incentive to file a mandate petition.[6]

Even if the state of the law had in fact made Ham's available avenues of judicial review appear futile, there is no "futility" exception to the principles of res judicata applicable here.[7] As the United States Supreme Court explained in *Federated Department Stores, Inc.* v. *Moitie* (1981) 452 U.S. 394, 398-399 [69 L.Ed.2d 103, 108-109, 101 S.Ct. 2424]: "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. [Citations.] Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong *or rested on a legal principle subsequently overruled in another case.* [Citations.] . . . We have observed that '[t]he indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of *res judicata* to avert.' *Reed* v. *Allen,* 286 U.S. 191, 201 (1932)." (First italics added.)

A similar argument was presented to the federal district court in *Moore* v. *City of Costa Mesa* (C.D.Cal. 1987) 678 F.Supp. 1448. There, the defendant city conditioned the issuance of a zoning variance to plaintiff Moore on his willingness to dedicate 10 percent of his property for a street-widening project. Moore successfully challenged the city's decision in a state court mandate action. Based on *Agins,* however, the superior court

---

[6] At oral argument, Ham expanded this argument by suggesting it would have been futile to challenge the conditional permit because existing law established it did not constitute a taking. At the time of the Commission's action in 1985, however, a single Court of Appeal case had recently held on similar facts that the imposition of a public access condition did not constitute a taking. (See *Grupe* v. *California Coastal Comm.* (1985) 166 Cal.App.3d 148, 171-177 [212 Cal.Rptr. 578].) There was no petition for review in *Grupe.* Although it may bind a trial court (see *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]) we refuse to accept the notion that a single intermediate appellate decision can excuse a party's failure to pursue available judicial remedies on the theory it would have been futile to do so. In addition, as the Supreme Court indicated in *Nollan,* courts in other jurisdictions were virtually unanimous in adopting analyses inconsistent with *Grupe.* (See 483 U.S. at pp. 838-841 [97 L.Ed.2d at pp. 690-692, 107 S.Ct. at pp. 3149-3150].)

[7] The same principles also underlie the rule that a change in the law will not revive claims already barred by the statute of limitations. (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1116-1117 [245 Cal.Rptr. 658, 751 P.2d 923].) That rule provides added support for our conclusions here.

refused to award damages for the temporary taking, and Moore did not seek to challenge *Agins* on appeal. A short time later, following the United States Supreme Court's decision in *First Lutheran,* Moore filed a complaint in federal district court pursuant to 42 United States Code section 1983 alleging his constitutional rights were violated because his property was temporarily taken without compensation. The district court dismissed Moore's complaint on grounds it was barred by principles of res judicata, reasoning as follows: "Res judicata bars relitigation in federal court of any state court judgment to the same extent that the state would bar relitigation. [Citations.] Moore argues that in light of *Agins,* pressing his claim for money damages in state court would have been futile. However, Moore cites no cases in support of a 'futility' exception to the principle of res judicata. Generally, a change in controlling law will not provide an exception to res judicata. [Citations.] In any case, Moore's claim for damages was not necessarily futile. If he had been unsuccessful in the Superior Court, he could have pressed his claim on appeal, and, if unsuccessful, petitioned for certiorari to the United States Supreme Court. This is exactly what happened in *First* [*Lutheran*] *Church*.

"Under California law, res judicata applies not only to those claims actually litigated in a prior proceeding, but also to those which could have been litigated as part of that cause of action. . . . The fact that a plaintiff requests a different type of relief, or even presents a different legal theory, does not negate or lessen the binding effect of the previous state court judgment." (678 F.Supp. at p. 1450; see also *Hatch* v. *Bank of America* (1960) 182 Cal.App.2d 206 [5 Cal.Rptr. 875].)

Similar reasoning is applicable here. The primary right at issue in the administrative proceeding was Ham's right not to have his private property taken by the government for public purposes without compensation. That is the same primary right he asserts in his inverse condemnation action, although he now seeks a different type of relief. It is true that in *Moore,* the plaintiff abandoned his claim for damages only after prevailing in the mandate action whereas here, Ham never sought mandate relief. Nonetheless, as pointed out by the court in *Moore,* res judicata applies where the same primary right is at stake even though the issue raised in the second action was never litigated in the first.[8] Moreover, any difference in result based on

---

[8]The line of California cases previously cited dealing with the preclusive effect of a final unreviewed administrative decision generally speak of the plaintiff being collaterally estopped to contest issues resolved against him in the administrative proceeding. (See, e.g., *Knickerbocker* v. *City of Stockton, supra,* 199 Cal.App.3d at p. 244.) This is because, normally speaking, the primary right at issue in the administrative action is a different one from that later

such a distinction would penalize those parties who actively sought to vidicate their rights, thereby discouraging innovation and the long-term development of the law.

■ Casting the argument somewhat differently, Ham relies on *Superior Strut & Hanger Co.* v. *Port of Oakland* (1977) 72 Cal.App.3d 987, 1002-1003 [140 Cal.Rptr. 515] for the proposition that where a party is excused from exhausting administrative remedies, he is also excused from seeking judicial review of the administrative determination. Ham asserts it would have been futile to pursue his administrative remedies because the Commission consistently required easement dedications as a condition of approving permits for coastal construction; accordingly, he contends, he was also not required to seek relief by way of administrative mandate.

We think Ham reads *Superior Strut* far too broadly in an effort to support a fundamentally untenable position. The *Superior Strut* court was careful to limit its holding to "the facts of the case." (72 Cal.App.3d at p. 1001.) On that basis, the case is easily distinguished. The plaintiff in *Superior Strut* was excused from exhausting its administrative remedies because those remedies were grossly inadequate, failing to provide for testimony, fact-finding or an opportunity for the claimant to be heard. (*Id.* at p. 1002.) Simply put, there was no formal administrative procedure and, thus, nothing which could be judicially reviewed. Obviously under such circumstances, the administrative mandate procedure which provides for review of a determination made during an *administrative hearing* is inappropriate. In contrast here, there was no theoretical or practical barrier to Ham's obtaining review of the validity of the easement condition in an administrative mandate action. The mere fact it was virtually certain the Commission would uphold the easement condition provides no basis for excusing Ham's failure to seek judicial review of the Commission's position.

---

sued upon, but the issues to some extent overlap. In *Moore,* on the other hand, the court was of the view that the primary right at issue in the administrative proceeding and mandate action was the same as that underlying the plaintiff's later 42 United States Code section 1983 action.

As our discussion suggests, we think *Moore*'s analysis is correct and applicable here. The primary right is the same; only the type of relief sought is different. Even if our problem were more properly analyzed in a collateral estoppel context, however, we would reach an identical conclusion. Under California law, where an issue has been litigated in a prior proceeding, a litigant cannot later seek a redetermination of that issue by raising new theories or arguments or seeking different forms of relief. (*Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 202 [99 P.2d 652]; *Kronkright* v. *Gardner* (1973) 31 Cal.App.3d 214, 216 [107 Cal.Rptr. 270]; see 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 257, p. 696.) Here, the validity of the permit condition was at issue in the prior administrative proceeding. Because Ham failed to contest that validity by the means provided for judicial review, he is now estopped to relitigate the same issue in the context of an inverse condemnation action.

■ Amicus curiae argues that even if res judicata based on a prior administrative determination would normally bar Ham's action, an exception exists where the agency has acted in excess of its jurisdiction. (See *City and County of San Francisco* v. *Ang* (1979) 97 Cal.App.3d 673, 679 [159 Cal.Rptr. 56].) Here, it is suggested, the unconstitutional permit condition was in excess of the Commission's jurisdiction and thus can be collaterally attacked in this inverse condemnation action. Numerous decisions have made clear, however, that "jurisdiction" for the purpose of applying this narrow res judicata exception refers to jurisdiction of the most fundamental kind. (See, e.g., *Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 731 [13 Cal.Rptr. 104, 361 P.2d 712]; *Ang, supra,* 97 Cal.App.3d at p. 678.) If a tribunal has subject matter jurisdiction in the fundamental sense, its decision will be res judicata notwithstanding that the decision is incorrect. "It is an established rule that where a tribunal has jurisdiction of the parties and of the subject-matter it necessarily has the authority and discretion to decide the questions submitted to it even though its determination is erroneous. [Citation.] This rule applies to quasi-judicial tribunals as well as to courts." (*Cullinan* v. *Superior Court* (1938) 24 Cal.App.2d 468, 471-472 [75 P.2d 518]; accord *Hollywood Circle, supra,* 55 Cal.2d at p. 731; *Ang, supra,* 97 Cal.App.3d at p. 678.) ■ Here, the Commission quite clearly had subject matter jurisdiction and the authority to impose permit conditions reasonably related to any burdens on the public beach created by the construction of Ham's residence.[9] (See *Nollan* v. *California Coastal Com'n, supra,* 483 U.S. at pp. 835-837 [97 L.Ed.2d at pp. 688-689, 107 S.Ct. at pp. 3147-3148].) The fact that it incorrectly analyzed the relationship between the burdens and the condition it sought to impose—or perhaps more accurately, incorrectly anticipated the action of the United States Supreme Court—does not mean it acted in excess of its jurisdiction in the fundamental sense. If he believed the Commission was wrong, Ham had a remedy by way of judicial review. ■ Having failed to avail himself of that recourse, he now has no basis for complaint.[10]

---

[9] This serves to distinguish the case principally relied on by amicus. In *Anza Parking Corp.* v. *City of Burlingame* (1987) 195 Cal.App.3d 855 [241 Cal.Rptr. 175], the city attempted to grant a *nontransferable* conditional use permit. The court held that under no circumstances did the city have the power to make the use permit nontransferable. That holding did not require any resort to the facts of the individual case. In contrast here, under a different set of facts, the Commission might very well be able to require the dedication of an easement as a condition for obtaining a building permit.

[10] Amicus also relies on *Williamson Planning Comm'n* v. *Hamilton Bank, supra,* 473 U.S. 172. It will be recalled that *Hamilton Bank* was one of the precursor decisions to *First Lutheran* in which the Supreme Court did not address the merits of the *Agins* rule. (See *ante,* p. 1497.) The plaintiff in *Hamilton Bank* brought a section 1983 action seeking to recover compensation for a temporary taking. In the context of reversing on procedural grounds, the court appears to state that a section 1983 plaintiff need not exhaust his administrative remedies including mechanisms the state has provided for judicial review of an administrative de-

## DISPOSITION

Let a peremptory writ issue directing the superior court to vacate its order overruling defendants' demurrer to the complaint and to enter a new order sustaining that demurrer.[11] The parties to bear their respective costs.

Todd, J., and Huffman, J., concurred.

A petition for a rehearing was denied June 9, 1989.

---

termination. (473 U.S. at pp. 192-193 [87 L.Ed.2d at pp. 142-143].) Amicus suggests *Hamilton Bank* supports its contention that judicial review of an administrative agency determination is not a necessary predicate to the recovery of compensatory damages based on allegations that the agency action constituted a regulatory taking.

The simple answer to this contention is that *Hamilton Bank* deals with the extent to which ripeness considerations will preclude an exclusively federal statutory cause of action. (See 42 U.S.C. § 1983.) No such cause of action has been pleaded here nor, we suspect, could one be. (See, e.g., *Pyne* v. *Meese* (1985) 172 Cal.App.3d 392, 403 [218 Cal.Rptr. 87].) In any event, no res judicata issues were raised and we are not familiar enough with Tennessee law to know whether res judicata would even apply to the administrative decision at issue in *Hamilton Bank*. Suffice it to say we do not read the case in any way to suggest that the federal Constitution requires states to abandon well-established principles of res judicata in order to afford property owners multiple opportunities to challenge alleged regulatory takings.

For the first time in his petition for rehearing, Ham requests leave to amend his complaint to plead a cause of action based on section 1983. As we have said, the prospects for success in such an attempt are remote. In any event, however, consideration of Ham's request at this point would necessitate rebriefing on an issue as yet unaddressed. Under these circumstances, we view the request as untimely.

[11] In view of our conclusion, we need not consider the State's additional contention that Ham waived his right to challenge the validity of the condition by complying with the Commission's decision and accepting its benefits. (See *County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505, 510-511 [138 Cal.Rptr. 472, 564 P.2d 14]; *Pfeiffer* v. *City of La Mesa* (1977) 69 Cal.App.3d 74, 78 [137 Cal.Rptr. 804].)