[No. E007837. Fourth Dist., Div. Two. May 24, 1991.]

GOLDEN CHEESE COMPANY OF CALIFORNIA et al., Plaintiffs and Appellants, v.
HENRY J. VOSS as Director, etc., et al., Defendants and Respondents.

## COUNSEL

Gibson, Dunn & Crutcher, Richard G. Duncan, Jr., Jeffrey A. Robinson and Edward L. Xanders for Plaintiffs and Appellants.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, R. H. Connett, Assistant Attorney General, and Douglas B. Noble, Deputy Attorney General, for Defendants and Respondents.

## OPINION

HOLLENHORST, Acting P. J.—This case is a companion case to the case of *Golden Cheese Company* v. *Voss, ante,* page 547 [281 Cal.Rptr. 602], herein referred to as *"Voss."* In that case, we decided that the trial court properly denied Golden Cheese's petition for writ of mandate because an order of the director of the Department of Food and Agriculture setting the minimum price to be paid by cheese manufacturers to producers for class 4b market milk was a valid exercise of the discretion entrusted to the director by the Legislature.[1]

In this case, Golden Cheese contends that the same order constituted a taking of its property by inverse condemnation. It contends that even a lawful order can give rise to an inverse condemnation claim. It therefore contends that the issues raised in this case are not dependent upon an outcome favorable to it in the companion case, and that the allegations of the complaint, taken as true for purposes of the demurrer, show that the trial court erred in sustaining the demurrer without leave to amend.

### THE COMPLAINT

1. *First Cause of Action—Declaratory Relief.*

In this cause of action, Golden Cheese alleges that a controversy exists between it and the department over the validity of the marketing order, and that it desires a judicial determination of the validity of the order. Since this court has decided in the companion case that the order was valid, this cause of action is moot.

2. *Second Cause of Action—Inverse Condemnation.*

In this cause of action, Golden Cheese alleges that the order "found and determined that Golden Cheese Co. purportedly operates a manufacturing plant which is not 'reasonably efficient.'" The plaintiff also alleges that "[t]he Order also found and determined that the operation by Golden Cheese Co. of its plant is contrary to the economic health of the dairy industry in California, and thus, that Golden Cheese Co. should not be entitled to recover its costs of operation, and also should not be entitled to a reasonable return on the value of its investment. The implementation and enforcement of the Order destroys substantially all viable economic interest in the plant

---

[1]This court has also recently filed an opinion in another case, *Golden Cheese Co.* v. *Parnell* (E006841) in which we considered the validity of a December 1988 order of the director. We found the order valid and therefore reversed the trial court's granting of a writ of mandate.

and property as described above." It contends that the order "has the effect of taking Golden Cheese Co.'s property without just compensation by frustrating Golden Cheese Co.'s reasonable, investment-backed expectations in its business and assets."

The issue presented by this cause of action is whether these allegations, and related allegations, are sufficient to overcome the demurrer, even though the order has been found to be a valid order.

### 3. *Third Cause of Action—Injunctive Relief.*

This cause of action alleges that Golden Cheese, as a taxpayer, has an interest in not spending tax dollars to implement the allegedly invalid order. Golden Cheese therefore requests a permanent injunction against implementation and enforcement of the order. Since this court has upheld the validity of the order, this cause of action is moot.

### REGULATORY TAKINGS AND INVERSE CONDEMNATION

Golden Cheese contends that the allegations of its first amended complaint state a cause of action for inverse condemnation based on a regulatory taking. The director's order here regulates the business of milk production under the general police power. (Food & Agr. Code, § 61801.) The constitutionality of such general regulations has long since been established and is not challenged here. (*Nebbia* v. *People of State of New York* (1934) 291 U.S. 502 [78 L.Ed. 940, 54 S.Ct. 505, 89 A.L.R. 1469]; *Jersey Maid Milk Products Co.* v. *Brock* (1939) 13 Cal.2d 620 [91 P.2d 577]; *Ray* v. *Parker* (1940) 15 Cal.2d 275 [101 P.2d 665]; *Knudsen Creamery Co.* v. *Brock* (1951) 37 Cal.2d 485 [234 P.2d 26]; Annot. 155 A.L.R. 1383.)

Instead of a facial attack on the validity of the regulation,[2] Golden Cheese attacks the regulation as applied to it, relying on the principle that a police power regulation that "goes too far" becomes a taking under principles of inverse condemnation. (*Pennsylvania Coal Co.* v. *Mahon* (1922) 260 U.S. 393, 415 [67 L.Ed. 322, 326, 43 S.Ct. 158, 28 A.L.R. 1321]: "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." See, also, *Keystone Bituminous Coal Assn.* v. *DeBenedictis* (1987) 480 U.S. 470 [94 L.Ed.2d 472, 107 S.Ct. 1232]; *First Lutheran Church* v. *Los Angeles County* (1987) 482 U.S. 304, 316 [96 L.Ed.2d 250, 264-265, 107 S.Ct. 2378];

---

[2]Golden Cheese does contend that the order is invalid because it does not advance a legitimate state interest. We think that its argument is answered by the decisions upholding the constitutionality of the statutory scheme and our decisions in *Parnell* and *Voss*.

MacDonald, Sommer & Frates v. Yolo County (1986) 477 U.S. 340, 349 [91 L.Ed.2d 285, 294-295, 106 S.Ct. 2561]; Annot. 89 L.Ed.2d 977.)

In Agins v. City of Tiburon (1980) 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138], the Supreme Court said: "The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests, [citation], or denies an owner economically viable use of his land, [citation]. The determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest." (Id., at p. 260 [65 L.Ed.2d at p. 112].)

In this case, there is no land use regulation, and the first amended complaint does not allege interference with Golden Cheese's real property per se. Instead it alleges that the order took its property because the order deprived it "of substantially all viable use of the assets of its cheese manufacturing business." It also alleges that the order has the effect of "damaging and destroying the economic value of the property of Golden Cheese Co." Thus, it is the business that has allegedly been destroyed, not the real property.

Golden Cheese argues that the "taking" tests set out in Connolly v. Pension Ben. Guar. Corp. (1986) 475 U.S. 211 [89 L.Ed.2d 166, 106 S.Ct. 1018] should govern here. In Connolly, plaintiff complained that the imposition of withdrawal liability on employers who ceased participation in multiemployer pension plans constituted a taking of its property. The court summarized its prior taking clause cases as follows: "In all of these cases, we have eschewed the development of any set formula for identifying a 'taking' forbidden by the Fifth Amendment, and have relied instead on ad hoc, factual inquiries into the circumstances of each particular case. [Citations.] To aid in this determination, however, we have identified three factors which have 'particular significance': (1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' [Citations.] Examining the [Multiemployer Pension Plan Amendments Act of 1980] in light of these factors reinforces our belief that the imposition of withdrawal liability does not constitute a compensable taking under the Fifth Amendment." (Id., at pp. 224-225 [89 L.Ed.2d at p. 179].)

Golden Cheese then applies these tests to the allegations of its first amended complaint and concludes that it has successfully alleged an inverse condemnation cause of action.

As noted in *Connolly*, the inquiry into the effect of a particular regulation on a particular business is a factual inquiry. (*Penn Central Transp. Co.* v. *New York City* (1978) 438 U.S. 104, 124 [57 L.Ed.2d 631, 648, 98 S.Ct. 2646]; *Andrus* v. *Allard* (1979) 444 U.S. 51, 63, 65-66 [62 L.Ed.2d 210, 221, 100 S.Ct. 318].) As such, it is not suited for evaluation on demurrer. (*MacDonald, Sommer & Frates* v. *Yolo County*, *supra*, 477 U.S. 340.) For example, Golden Cheese alleges that "By purporting to find that Golden Cheese Co. operates a plant which is not reasonably efficient and is 'economically wasteful,' the Department attempted to single out Golden Cheese Co. from among other cheese manufacturers and rule that Golden Cheese Co. is a plant which, as a matter of state dairy policy, should no longer be permitted to conduct its business in California. The intended effect of these findings and the Order is to deny to Golden Cheese Co. the right and ability to conduct its business by precluding it from recovering its costs of operation and by denying it any reasonable opportunity to earn a return on its investment." Taken as true, these allegations lead to the conclusion that the department singled out Golden Cheese to destroy its lawful business in California.

Golden Cheese has thus alleged some facts which, if proven, would support a determination that the government has gone too far and taken its property. It could possibly allege other facts which might bolster its allegations. (Cf. *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 816-817 [258 Cal.Rptr. 161, 771 P.2d 1247].) "Despite general judicial reluctance to invalidate regulations of conduct on the ground that ensuing economic loss constitutes a taking or damaging of private property, appellate opinions have persisted in giving lip service, at least, to the thought that such a result is legally possible." (Van Alstyne, *Taking or Damaging by Police Power: The Search for Inverse Condemnation Criteria* (1971) 44 So.Cal.L.Rev. 1, 4.)

Golden Cheese therefore contends that the trial court erred in sustaining its demurrer without leave to amend. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 942, pp. 377-378.) Since the issue of whether there has been a taking is essentially an "ad hoc factual inquiry," we would be inclined to agree with Golden Cheese that it has or could possibly state a cause of action if we had not concurrently decided the validity of the order and related issues in the *Voss* case.

### EFFECT OF THE VOSS DECISION

In the *Voss* case, we determined that the order was valid, and we also delved into the pricing formula set by the director. In discussing the manufacturing cost allowance determination, which is the basis for the action here, we noted that the director found a wide variation in actual costs among

California cheese manufacturers and chose an allowance near the average cost to cover "reasonably efficient plants." We rejected Golden Cheese's contention that the director had to set the manufacturing cost allowance high enough to cover all cheese plants, to the detriment of producers. We cited the cases of *Challenge Cream etc. Assn.* v. *Parker* (1943) 23 Cal.2d 137 [142 P.2d 737, 149 A.L.R. 1203] and *Emby Foods, Inc.* v. *Paul* (1964) 230 Cal.App.2d 687 [41 Cal.Rptr. 365], in which the court found that the director was authorized to set prices below cost and a reasonable rate of return. We concluded that the setting of such an allowance was not an abuse of the director's discretion, and such a determination is at the core of the director's quasi-legislative discretion.

■ The issue thus presented is whether our determinations in the *Voss* case govern our decision in this case. The department argues that a decision in *Voss* which upholds the administrative decision would prevent an inverse condemnation claim or, in other words, that a decision invalidating the administrative decision is a prerequisite to an inverse condemnation action. It relies on *California Coastal Com.* v. *Superior Court* (1989) 210 Cal.App.3d 1488 [258 Cal.Rptr. 567]. In that case, a homeowner sued the Coastal Commission in inverse condemnation, alleging that a permit condition that required him to dedicate an easement to the public in order to obtain a building permit was an unconstitutional taking of his property without compensation. The state contended that the homeowner's failure to file a petition for writ of administrative mandamus to contest the Coastal Commission decision at the time it was made precluded the homeowner from subsequently filing an inverse condemnation action. The court held that the inverse condemnation action should have been filed with an administrative mandate action. We find the case of limited usefulness since Golden Cheese did file this inverse condemnation action with its action challenging the validity of the director's order.

We disagree with the department's contention that Golden Cheese cannot state a cause of action for inverse condemnation unless it alleges the invalidity of the order. The question is not whether the order is valid, but rather whether it takes plaintiff's property without payment of just compensation. "This basic understanding of the [Fifth] Amendment makes clear that it is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." (*First Lutheran Church* v. *Los Angeles County, supra*, 482 U.S. 304, 315 [96 L.Ed.2d 250, 264].[3]

---

[3]On remand, it was held that plaintiff failed to state a cause of action because the ordinance did not "take" its property. It "substantially advanced the preeminent state interest in public

An example is the recent case of *Nollan* v. *California Coastal Com'n* (1987) 483 U.S. 825 [97 L.Ed.2d 677, 107 S.Ct. 3141]. In that case, the Coastal Commission allowed a homeowner to rebuild his house on condition that he grant the public an easement across his beach front property. The Supreme Court said: "Had California simply required the Nollans to make an easement across their beachfront available to the public on a permanent basis in order to increase public access to the beach, rather than conditioning their permit to rebuild their house on their agreeing to do so, we have no doubt there would have been a taking." (*Id.*, at p. 831 [97 L.Ed.2d at p. 685].) The court then considered whether the condition required compensation, saying "We have long recognized that land-use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land,'. . ." (*Id.*, at p. 834 [97 L.Ed.2d at p. 687].) Thus, although the commission could have denied the permit altogether, it could not condition the permit as it did, because "the condition substituted for the prohibition utterly fails to further the end advanced as the justification for the prohibition." (*Id.*, at p. 837 [97 L.Ed.2d at p. 689].) Without the essential nexus, an otherwise valid order simply becomes a way of obtaining an easement without paying for it. This is a taking. As the court concluded, "if [California] wants an easement across the Nollans' property, it must pay for it." (*Id.*, at p. 842 [97 L.Ed.2d at p. 692].)

In most cases, the validity of the administrative decision is not in issue, and the only issue is whether the government took a property right it must pay for. Inverse condemnation damages can only "be recovered for a 'regulatory taking,' i.e., a governmental regulation which exceeded the police power to the extent it allowed for the taking of private property without payment of fair compensation." (*California Coastal Com.* v. *Superior Court*, *supra*, 210 Cal.App.3d 1488, 1494.) Thus, even though a Coastal Commission regulation may be valid, it can also amount to a taking.[4]

Even though our finding in *Voss* that the order is valid does not automatically preclude this inverse condemnation action, we cannot totally ignore

safety and did not deny appellant all use of its property." (*First English Evangelical Lutheran Church* v. *County of Los Angeles* (1989) 210 Cal.App.3d 1353, 1356 [258 Cal.Rptr. 893].)

[4]The department's position is fortified, however, by *Farmers Ins. Exchange* v. *State of California* (1985) 175 Cal.App.3d 494, 501 [221 Cal.Rptr. 225]: "Damages inflicted in the course of a proper exercise of the state's police power are noncompensable." Nevertheless, we continue to believe that it is at least possible to allege an exercise of the police power that is within the agency's authority but nevertheless constitutes a regulatory taking. "[A] broad interpretation of this doctrine of noncompensable loss would completely vitiate the constitutional requirement of just compensation." (*Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 305 [90 Cal.Rptr. 345, 475 P.2d 441].) "Governmental land use regulations may in some instances effect a 'taking.' " (*Twain Harte Associates, Ltd.* v. *County of Tuolumne* (1990) 217 Cal.App.3d 71, 80 [265 Cal.Rptr. 737].)

our findings in *Voss*. Once the appeal in the *Voss* case becomes final, it will be res judicata or collateral estoppel. (Code Civ. Proc., §§ 1908, 1911.) ■ "A second action between the same parties on a *different cause of action* is not precluded by a former judgment. . . . But the first judgment 'operates as an *estoppel or conclusive adjudication* as to such issues in the second action as were *actually litigated and determined in the first action.*' " (7 Witkin, Cal. Procedure (1985) Judgment, § 253, pp. 691-692.)

Thus, in *Grable* v. *Grable* (1960) 180 Cal.App.2d 353, 359-360 [4 Cal.Rptr. 353], the court said: "It is also settled that the decision of an appellate court . . . falls within the purview of the doctrine of res judicata and is conclusive of the issues and matters determined by the appellate court." (See, also, *Ryerson* v. *Riverside Cement Co.* (1968) 266 Cal.App.2d 789 [72 Cal.Rptr. 595]; *Beckstead* v. *International Industries, Inc.* (1982) 127 Cal.App.3d 927 [179 Cal.Rptr. 767]; *Overstreet* v. *County of Butte* (1962) 57 Cal.2d 504 [20 Cal.Rptr. 631, 370 P.2d 335].)[5] "[W]here the causes of action are different but the parties are the same, the doctrine applies so as to render conclusive matters which were decided by the first judgment." (*Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 201 [99 P.2d 652].)

■ We therefore find it proper to evaluate Golden Cheese's taking claim in the light of the issues we have decided in the previous actions between the same parties. Viewed in this light, the allegations in the first amended complaint cannot support the alleged cause of action. Accordingly, we agree with the trial court that Golden Cheese could not state a cause of action for inverse condemnation here. (5 Witkin, Cal. Procedure, *op. cit. supra*, Pleading, § 945, pp. 379-380.)

### APPLICATION OF THE CONNOLLY TEST

Returning to the three tests stated in *Connolly*, we first consider the economic impact of the regulation. Golden Cheese attempts to bring itself under *Agins* by alleging that the economic viability of its plant has been destroyed. (*Agins* v. *City of Tiburon, supra*, 447 U.S. 255.) However, *Agins* was a zoning case, and the taking alleged was a prohibition of the use of plaintiff's land. In this case, no interference with the real property of Golden Cheese is alleged. ■ "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government [citation], than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." (*Penn Central Transp. Co.* v. *City of New York City, supra*,

---

[5]The doctrine applies to matters previously litigated by the parties. It does not apply to subsequent orders made by the department pursuant to its continuing mandate to adjust prices to conform to changing conditions. (*Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 732 [13 Cal.Rptr. 104, 361 P.2d 712].)

438 U.S. 104, 124 [57 L.Ed.2d 631, 648].) This is so because regulations, unlike physical invasions, do not typically extinguish the "full bundle" of rights in a particular piece of property. (*Keystone Bituminous Coal Assn.* v. *DeBenedictis, supra,* 480 U.S. 470, 516 [94 L.Ed.2d 472, 508]; *Andrus* v. *Allard, supra,* 444 U.S. 51, 63, 65-66 [62 L.Ed.2d 210, 222-223].)[6]

█ Even if the first amended complaint alleged that Golden Cheese had been forced out of business because of the director's order, and it does not so allege, the loss of the business would not necessarily be a "taking" under the inverse condemnation law. "Regulations that bar trade in certain goods have been upheld against claims of unconstitutional taking." (*Andrus* v. *Allard, supra,* 444 U.S. 51, 63, 67 [62 L.Ed.2d 210, 223].) For example, in *Mugler* v. *State of Kansas* (1887) 123 U.S. 623 [31 L.Ed. 205, 8 S.Ct. 273], a Kansas prohibition law "very materially diminished" the value of Mugler's brewery. The court upheld the Kansas law and found that there was no "taking" because the legislation was a valid exercise of the police power. (*Id.,* at pp. 668-669 [31 L.Ed. 212-213].) The court said: "The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner." (*Id.,* at p. 669 [31 L.Ed. at p. 213]; see, also, *Hamilton* v. *Kentucky Distilleries & Warehouse Co.* (1919) 251 U.S. 146 [64 L.Ed. 194, 40 S.Ct. 106]; *Andrus* v. *Allard, supra,* 444 U.S. 51.) "If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional." (*Goldblatt* v. *Hempstead* (1962) 369 U.S. 590, 592 [8 L.Ed.2d 130, 133, 82 S.Ct. 987].)[7]

Thus, even if the police power was used, for valid reasons (e.g. health reasons), to eliminate the cheese manufacturing business in California, a

---

[6]The parties do not discuss the differences between a physical taking of plaintiff's real property, a land use regulation that prevents real property from being put to its present use (or other beneficial use) and a police power regulation which affects a business being conducted on the real property. Although the department argues that no "property" has been taken, we find that contention answered by *City of Oakland* v. *Oakland Raiders* (1982) 32 Cal.3d 60 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208]. In that case our Supreme Court discussed the broad definition of property in the context of a city's attempt to condemn a sports franchise.

[7]See the discussion of this case in Sax, *Takings and the Police Power* (1964) 74 Yale L.J. 36, 42-43.

cheese manufacturer might be unable to state a cause of action in inverse condemnation for his lost business. (See, e.g., *Keystone Bituminous Coal Assn.* v. *DeBenedictis, supra,* 480 U.S. 470, 490 [94 L.Ed.2d 472, 491-492], citing *Miller* v. *Schoene* (1928) 276 U.S. 272 [72 L.Ed. 568, 48 S.Ct. 246]; Annot. 89 L.Ed.2d 977.)

The second factor stated in *Connolly* is interference with investment-backed expectations. Considering the well-known fact that market milk prices are set by the director, and changed to reflect changing market conditions, Golden Cheese could not and does not allege that it was entitled to rely on any particular price level in deciding whether to build its plant. It admits that "[i]t is true that Golden Cheese Co. could not have reasonably expected that it would always be provided a high rate of return on its investments. But, clearly, Golden Cheese Co. could not have reasonably expected the Department's enactment of a pricing program directed at Golden Cheese Co., and specifically designed to prevent it from achieving any return on its investment."

While we agree that Golden Cheese could not reasonably have expected a vendetta against it, the *Voss* decision establishes that there was none. As we found in *Voss*, prior cases allowed the director to choose a manufacturing cost allowance that reflected the experience of cheese manufacturing plants of average efficiency, and nothing in law or logic compels him to set an allowance that will cover the costs of all cheese manufacturers, no matter how high, to the resulting detriment of milk producers. The director expressly found that such an allowance would upset the required statutory "reasonable price relationship" between the various classes of milk. (Food & Agr. Code, § 62062, subd. (c).) Golden Cheese did not contend in *Voss* that the director's actions were specifically intended to drive it out of business. We found no vendetta, only a good faith attempt by the director to carry out his statutory mandate by adopting a price formula for class 4b market milk based on California specific cheese cost factors.

We therefore find that Golden Cheese had no reasonable investment-backed expectations to any particular milk price level. Indeed, it was one of the companies urging the director to adopt a new class 4b formula that would be based on the costs of manufacturing cheese in California. It got what it asked for.

The third test in *Connolly* is the nature of the governmental action. We find the discussion of this point in *Connolly* particularly apt: "[W]ith respect

to the nature of the governmental action, we already have noted that, under the Act, the Government does not physically invade or permanently appropriate any of the employer's assets for its own use. Instead, the Act safeguards the participants in multiemployer pension plans by requiring a withdrawing employer to fund its share of the plan obligations incurred during its association with the plan. This interference with the property rights of an employer arises from a public program that adjusts the benefits and burdens of economic life to promote the common good and, under our cases, does not constitute a taking requiring Government compensation." (*Connolly* v. *Pension Ben. Guar. Corp.*, *supra*, 475 U.S. 211, 225 [89 L.Ed.2d 166, 179].)

Valid price regulations are a traditional exercise of the police power, and the prices set by the director for different classes of market milk constantly change the economic balance between producers and manufacturers. There is no "taking" of property every time a price changes, and Golden Cheese has asserted no reasons supporting "a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest." (*Agins* v. *City of Tiburon*, *supra*, 447 U.S. 255, 260 [65 L.Ed.2d 106, 112].) If the rule were otherwise, producers and manufacturers of milk would be entitled to compensation for every price change unfavorable to them. A regulatory scheme based on this rule could not survive. As Justice Holmes stated in *Pennsylvania Coal Co.* v. *Mahon*, *supra*, 260 U.S. 393, 413 [67 L.Ed. 322, 325]: "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." (See also, *Keystone Bituminous Coal Assn.* v. *DeBenedictis*, *supra*, 480 U.S. 470.)

## CONCLUSION

Although there is no set factual formula for deciding whether property has been "taken" in inverse condemnation, weighing of the factors found to have "particular significance" leads us to the conclusion that Golden Cheese has not and cannot state a cause of action in inverse condemnation under the circumstances here. Even if the allegations of the first amended complaint were sufficient when taken as true, principles of res judicata and collateral estoppel require us to interpret those allegations in the light of the decisions we previously made in the *Voss* case. Having done so, we conclude that the order complained of cannot be the basis for an inverse condemnation action. Accordingly, the trial court correctly sustained defendants' demurrer.

## DISPOSITION

The order sustaining demurrer without leave to amend and dismissing action, entered as a judgment on January 12, 1990, is affirmed.

Timlin, J., and McDaniel, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied August 29, 1991.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.