[Civ. No. 24809.   Second Dist., Div. Two.   Sept. 27, 1960.]

HESPERIA LAND DEVELOPMENT COMPANY (a Corporation) et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents; W. A. SAVAGE, as Real Estate Commissioner, etc., Real Party in Interest.

Weber, Schwartz & Alschuler, Greenberg, Ziffren & Shafton, Millen & Gerstenfeld, Jacob W. Silverman, H. Spencer St. Clair and Downey A. Grosenbaugh for Petitioners.

No appearance for Respondents.

Stanley Mosk, Attorney General, Lee B. Stanton and Arthur C. de Goede, Deputy Attorneys General, for Real Party in Interest.

KINCAID, J. pro tem.*—Petitioners seek writ of mandate ordering respondent court to vacate its final order of dismissal of an action heretofore filed in said court by petitioners as plaintiffs versus W. A. Savage, as Real Estate Commissioner of the State of California, No. EA-C153; to reinstate the temporary restraining order previously issued therein thus restoring petitioners to a status which existed prior to such order of dismissal; that thereby the said Real Estate Commissioner, the real party in interest herein, be enjoined from interfering with petitioners' sale or other disposition of their real property or with their activities or taking any further administrative action or proceedings and to stay any proceedings now pending before the said Real Estate Commissioner and for other relief.

On May 9, 1960, a temporary cease and desist order was issued by the said Real Estate Commissioner pursuant to section 10084, Business and Professions Code. This section was adopted by the Legislature effective July 20, 1959 (Stats. 1959, ch. 2116, p. 4933), and provides as follows: "Whenever in the opinion of the commissioner any person has [sic] or is violating, or is about to violate, any of the provisions of this part or of Chapter 1 (commencing at § 11000) of Part 2 of this division, the commissioner may order the person to desist and

---

*Assigned by Chairman of Judicial Council.

refrain from doing so. If, after such an order is made, a request for a hearing is filed in writing and hearing is not held within 60 days thereafter, the order is rescinded."

On May 24, 1960, petitioners filed with the Real Estate Commissioner, hereinafter referred to as "commissioner," their request for a hearing and also filed the above numbered action in respondent court and applied for and received a temporary restraining order and order to show cause. This restraining order precluded any further administrative action and restrained the enforcement of the cease and desist order issued by the commissioner. Subsequently a hearing on the order to show cause was held by the respondent court with all parties represented and the said court thereupon dissolved such temporary restraining order and dismissed the complaint in said action. The cease and desist order previously entered by the commissioner was thereby reinstated pending determination of the controversy by administrative processes.

On June 21, 1960, an amended order to cease and desist was served on said petitioners and was filed and a hearing was begun before an officer of the Division of Administrative Procedure of the State of California, who was assigned to preside. All parties were represented and evidence was received. The hearing was thereafter continued to July 21, 1960, for further consideration of the issues involved and on successive days additional evidence was duly received.

On August 22, 1960, following the hearings conducted by him on June 21 to 23 inclusive and July 11 to 25 inclusive, 1960, the said hearing officer filed with the commissioner his proposed decision. On September 6, 1960, the commissioner filed his order of nonadoption of the proposed decision. By said order the commissioner rejected in its entirety the proposed decision of the hearing officer and referred said matters to another hearing officer for further hearing.

On July 5, 1960, we granted alternative writ of mandate ordering the respondent court to assume jurisdiction of the above numbered action filed by petitioners in said court against said commissioner or show cause before this court why it should not do so.

Petitioners allege generally that certain of them are and have been engaged in the subdivision, development and sale of real property in the county of San Bernardino, commonly known as Hesperia and for convenience are referred to as the Phillips group. Certain other of the petitioners are engaged

in operating a museum, a recreation club, an inn, a golf course and other similar activities within the Hesperia area. Petitioners' complaint as filed in the said action in respondent court, as well as the petition for mandate filed herein, avers that for some six years last past certain of the petitioners have improved and developed the Hesperia area resulting in substantial sales of real property; that at all times in question said developers believed and still believe that there was and is an adequate underground source of water to serve not only the present but future needs of the buyers and residents of said property and that the water distribution system and the source of water supply developed and made available to the Hesperia Water Company, a public utility company, were and are adequate under regulations of the Public Utilities Commission of California to serve the requirements of an increased density of population in said area; that said petitioners have expended large sums for advertising and good will, have trained experienced sales and clerical personnel.

On July 29, 1958, the Public Utilities Commission (hereinafter called P.U.C.) did, upon its own motion, institute an investigation into the operation and service of the Hesperia Water Company and the Kayem Investment Company. Petitioners allege they were not parties to the hearing held before the P.U.C. nor were they given any notice of said hearing.

At the conclusion of the hearing before the P.U.C. an order dated November 17, 1959, was issued finding generally that Kayem Investment Company is a public utility water corporation owning and controlling a water system for compensation; that Kayem shall immediately file with P.U.C. certain reports, accounts and maps; that Hesperia Water Company shall submit a written plan for a water system adequate to serve the presently serviced area and to include the location of the proposed additional wells and other facilities which will afford reasonable assurance of sufficient potable water; that Kayem and Hesperia Water shall submit a proposed schedule for the rehabilitation of the water system facilities as studies may show to be insufficient, inadequate or obsolete; plans for fire protection service and including other directives.

It is further contended by petitioners that as a result of the issuance by the commissioner of the said cease and desist order they have suffered and will continue to suffer irreparable damage and injury in that they have been deprived of their right to sell or otherwise dispose of the property; that their

reputations for integrity have been damaged; that their fixed expenses will continue though revenues from new sales of petitioners' property have been halted; that their credit has been impaired and that by virtue of the said commissioner's order issued without a hearing petitioners have been deprived of a constitutional right to prior notice and hearing.

Following issuance of the alternative writ herein, commissioner as real party in interest, in return to the alternative writ and by way of answer to the petition for writ of mandate, filed his demurrer and answer. The demurrer is on the ground that the petition does not state a cause of action nor does it state facts sufficient to entitle the petitioners to the relief sought and that this court does not have jurisdiction over the subject matter of the petition. The answer alleges that a hearing on said order to cease and desist, as amended, was held and is now being held within 60 days of the request therefor as provided by section 10084, Business and Professions Code; denies that petitioners referred to as the Phillips group did not participate in the P.U.C. hearing heretofore described or that they were not given notice of said hearing or the order issued upon the conclusion of said hearing. Said answer alleges upon information and belief that Kayem Investment Company and Hesperia Water Company have been since April 24, 1956, and now are, under the complete domination and control of the Phillips group and that Kayem and Hesperia Water are merely the *alter egos* of said group.

■■■ The alternative writ was issued for the limited purpose of enabling us to consider the question as to whether the Legislature acted within its constitutional limitations in enacting the said section 10084, Business and Professions Code and, if so, to determine whether the means adopted to accomplish the result herein achieved by issuance of the said cease and desist order are reasonably designed for that purpose and have a real and substantial relation to the objects sought to be attained. In reviewing legislation for the purpose of testing its propriety as an exercise of the police power, the power of this court is limited to such a determination. ■■ It must be presumed at the outset that the Legislature acted within its powers. The burden is upon those attacking the statute to make a showing that the statute is unconstitutional. (*Serve Yourself Gas etc. Assn.* v. *Brock,* 39 Cal.2d 813, 817-818 [249 P.2d 545].)

In first considering petitioners' constitutional objections

to said section 10084, it is necessary to review the procedure authorized by said enactment. It authorizes a cease and desist order whenever, in the opinion of the commissioner, a person is violating or is about to violate any provision of part 1 of the Real Estate Law relating to licensing of persons, or of chapter 1 of part 2 thereof relating to regulation of real estate transactions, including subdivided lands. This is only a temporary order if "a request for a hearing is filed in writing." If a hearing is not held within 60 days thereafter the order is rescinded. Thus, the order has the effect of preserving the status quo until a hearing is held to determine whether there is a violation or a potential violation of the law. No order becomes final until after the hearing and even then it is subject to judicial review.

It has long been established that when the Legislature has determined that summary powers must be exercised by administrative bodies in order to protect the public, they may do so without prior notice or hearing provided that there may be a subsequent administrative or judicial review thereof.

The superintendent of banks is empowered to forthwith take possession of a bank whenever it appears to him that said bank is unsound, is conducting its business in an unsafe or unauthorized manner and for other enumerated grounds (Fin. Code, § 3100 et seq.) or to appoint a conservator therefor (Fin. Code, § 3180 et seq.). Such bank may within 10 days thereafter apply to the court for relief from such orders (Fin. Code, §§ 3101, 3181). The Savings and Loan Commissioner has like powers as applied to savings and loan associations. (Fin. Code, §§ 9000 et seq.; 9126 et seq.) Any question as to the constitutionality of these provisions has been fully determined by our Supreme Court in *Holabird* v. *Richardson,* 3 Cal.2d 299, 303 [44 P.2d 530]; *North American Building etc. Assn.* v. *Richardson,* 6 Cal.2d 90 [56 P.2d 1221].

The Insurance Commissioner, on enumerated grounds, is statutorily authorized to take over and conserve the assets of persons or corporations engaging in the insurance business. (Ins. Code, § 1011 et seq.) In *Financial Indem. Co.* v. *Superior Court,* 45 Cal.2d 395 [289 P.2d 233], the constitutionality of these provisions was upheld. There one Vaughn, owner of all stock of Financial Indemnity Company, sought to enjoin the commissioner from taking over the assets of the corporation. As in our instant case, the trial court refused a restraining order based upon the ground of lack of

jurisdiction. In reviewing the question as to whether the commissioner may be enjoined from proceeding with his conservatorship the court said (pp. 400, 401, 402): ''The purpose of Vaughn and the company is to have the issue of whether grounds for conservatorship exist determined before the commissioner is allowed to take over the company. They assert that if the conditions provided by statute as grounds for taking over the business of an insurer do not exist, an order allowing the commissioner to do so would amount to an application of the provisions of the Insurance Code against them in an unconstitutional manner. This argument assumes that any error in judgment by the commissioner would be a violation of constitutional rights. But as was said in *Rhode Island Ins. Co.* v. *Downey*, 95 Cal.App.2d 220, 230-231 [212 P.2d 965], 'It is not a requirement of the statute . . . , that such matters not be disputable. The Legislature undoubtedly assumed that in most cases the company involved would dispute the commissioner's contentions, and accordingly provided, in section 1012 for a full hearing before the trial court, at which the company could show that the conditions claimed by the commissioner did not exist. There is no implied restriction in the statute that the commissioner act only where the existence of the dangerous condition is beyond dispute.'

''In the Rhode Island case the commissioner obtained an order appointing him conservator. The company sought a writ of mandate directing the superior court to vacate the order, contending, among other points, that the facts did not justify the commissioner's action. The court refused to issue the writ, saying, 'The statute, as construed by the California courts, requires only that the commissioner file a verified application stating that he has found one, or more, of the statutory grounds to exist. ''In making his application under section 1011 of the Insurance Code, *the commissioner does not seek a judicial appointment and a judicial ruling that the company is in fact delinquent.* By his application the commissioner merely represents that he has found certain conditions to exist and has made his official administrative determination to proceed as authorized by the statute. In obtaining his original ex parte order, *the commissioner is not required to show* to the court *that the company was in fact in a hazardous condition,* but only that he, as a state officer, invested by legislative authority with the power, has so 'determined' and 'found.' '' (*Caminetti* v. *Imperial Mut. L.*

*Ins. Co.,* 59 Cal.App.2d 476, 487 [139 P.2d 681] . . . ; emphasis added.)' (Pp. 230, 231.)

"The court not only concluded that the issues must be heard in a proceeding brought pursuant to section 1012 but also held that an order made in accordance with its provisions is not a deprivation of due process. 'Although the requirements of due process often involve a prior full hearing, it has long been recognized that where public necessity requires, there can be action *followed* by a hearing . . . .' (P. 235.) [Citations.] 'It must be remembered that insurance companies, like banks and building and loan companies, are charged with a public interest, and hence, the price of doing business is the fact that whenever a condition exists which the insurance commissioner feels is hazardous, he may take over the company and the question of whether he was justified in doing so is thereafter threshed out.' (P. 233.)

"The Legislature has provided a procedure by which the public interest in insurance companies may be protected. The only requirement for judicial action upon the application of the commissioner is his determination that he believes a hazardous condition exists which jeopardizes the future of the company. Upon an application stating those facts, the code provides that the court 'shall' issue the order for conservatorship. The word 'shall' as used in the Insurance Code, is mandatory. (§ 16.)

"Section 3423, subdivision 4, of the Civil Code and also section 526, subdivision 4, of the Code of Civil Procedure provide that an injunction cannot be granted 'to prevent the execution of a public statute, by officers of the law, for the public benefit.' These sections do not bar judicial action where the invalidity of the statute under which he is acting is shown [citation] or when the officer exceeds his powers. [Citation.] However, sections 1011 and 1013 of the Insurance Code have been upheld as valid [citation], and if the commissioner follows the statutory procedure and certifies that certain conditions exist, his action cannot be successfully challenged on the ground of excess of authority."

In 1949, the Legislature empowered the Corporation Commissioner, whenever in his opinion the further sale of securities by any company would be unfair, unjust or inequitable to purchasers thereof, to order the company to desist and to refrain from any further sale. Provision is made for a request for hearing, after issuance of such order, by the com-

missioner and unless hearing is held within 60 days the order is rescinded. (Corp. Code, § 25514.) Since enactment of this provision the power of the commissioner to prohibit further sale of securities without a prior hearing appears not to have been challenged. (See *Oil Lease Service, Inc.* v. *Stephenson,* 162 Cal.App.2d 100 [327 P.2d 628].)

In *Halsey, Stuart & Co.* v. *Public Service Commission* (1933), 212 Wis. 184 [248 N.W. 458], a securities broker's license was summarily revoked under a statute providing therefor if, *inter alia,* the commission finds that the general business methods of such broker are unfair or inequitable or he has engaged or is about to engage in any fraudulent action. In reply to the challenge of constitutionality because no prior hearing was required the court concluded that this was not fatal to the validity of the statute in view of the provision for a requested hearing by the commission within 30 days. In this regard the court stated (p. 461) : "It is said that there is no provision for a hearing. It is true that there is none prior to suspension. We do not regard this as fatal to the validity of the law. Having in mind that this is an exercise of the police power, and that it is valid in so far as it is reasonably necessary and appropriate to the promotion of the public welfare, it seems to us that the act must be sustained. The court may take notice of the fact that much harm may come to the citizens of the state, and that they may be the victims of much fraud and imposition unless they are speedily protected from improper practices in the sale of securities. Having in mind modern sales methods and the speed at which the business of today is done, promptness of action on the part of the commission may be the measure of its effectiveness. While the suspension may seriously damage the business of a particular broker, this consideration is not fatal to the validity of the act, provided it is reasonably necessary to protect the public. The rights of the public to exercise the police power in its own protection are superior to those of any individual broker to sell under his license or certificate . . . . It is our conclusion that the statute does not deny due process. In the interest and protection of the public, provision is made for a summary suspension, followed by provisions for a speedy hearing upon the merits of the suspension order if and when demanded by the broker affected. This amounts to no more than a reasonable and valid exercise of the police power."

The procedure provided by the said Wisconsin statute is

generally similar to the above mentioned section 25514, Corporations Code. Both are closely analogous to the provisions of section 10084, Business and Professions Code under which the cease and desist order was issued to petitioners herein.

The regulation of the sale of subdivided lands by the Real Estate Commissioner has been upheld as a reasonable exercise of the police power. (*In re Sidebotham,* 12 Cal.2d 434, 436 [85 P.2d 453, 122 A.L.R. 496].)

It is our conclusion that section 10084 does not deny due process and that it represents a valid exercise of the police power of the state.

We now proceed to an examination as to whether the means utilized by the commissioner have a real and substantial relation to the objects sought to be attained by said statute.

The commissioner charges, in his amended order to cease and desist, *inter alia,* that it has been determined there has been a material change in the setup of the offerings made by petitioners in the various numbered tracts denominated the Hesperia Industrial Tract; that such change materially affects the value or utility of such offerings without notification in writing to the real estate division of such change and occurred after each of the subdivision questionnaires of said tracts were submitted to said division and under which the lots therein were offered for sale as residential lots for which an adequate supply of water was or would be available.

He further charges that, by virtue of a hearing before and decision of the P.U.C. as to which the Phillips group, and their alter egos Hesperia Water Company and Kayem Investment Company were parties, it was indicated there is evidence of the inadequacy of the water source facilities and possible health hazards, incidental to poorly designed, inadequate size water transmission line and dilapidated condition of much of the old, small water transmission lines serving the old Hesperia townsite; that the water company cannot afford to replace such lines; that certain wells are so poorly constructed as to be hazardous because of the danger of becoming unsanitary.

These alleged violations are of a character falling within the provisions of part 1 or of chapter 1 of part 2 of the Real Estate Law as grounds for which the commissioner is authorized by section 10084 to issue a cease and desist order. Hearing has been held within 60 days pursuant to the request of petitioners. We therefore conclude that the means utilized by the

commissioner herein are substantially related to the objects sought to be attained by the said statute.

The Legislature is the judge in the first instance of what is necessary for the public welfare, and, in the absence of a showing of arbitrary interference with property rights or of the lack of substantial relation between means and a legitimate subject for regulation, we cannot declare this legislation invalid. (*Serve Yourself Gas etc. Assn.* v. *Brock, supra,* 39 Cal.2d 813, 820.)

The primary purpose for enactment of section 10084 is to prevent dissipation of the assets of individuals or corporations, engaged in the business of selling real property to the public, after the commissioner has determined that a hazardous condition exists. A court is not vested with jurisdiction to enjoin such commissioner from exercising his official discretion under said section merely by reason of an allegation in the pleadings that he has abused his discretion or has acted in bad faith. (*Financial Indem. Co.* v. *Superior Court, supra,* 45 Cal.2d 395, 402, 403.)

Exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts. One exception to this general rule is where irreparable injury will result if an administrative hearing is permitted to proceed and its orders made effective without prior judicial interference. (*Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 293, 296 [109 P.2d 942, 132 A.L.R. 715] ; *Greenblatt* v. *Munro,* 161 Cal.App.2d 596, 605-606 [326 P.2d 929].)

In the instant case the trial judge heard arguments on the issue of irreparable injury and assumed limited jurisdiction for the purpose of making this determination. The subsequent dismissal of petitioners' complaint in said action is a rejection of their claim of irreparable injury and an exercise of a discretion to follow the statutory procedure providing for an administrative proceeding precedent to court action.

The demurrer is sustained, the alternative writ of mandate is discharged and the peremptory writ is denied.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied October 25, 1960, and petitioners' application for a hearing by the Supreme Court was denied November 23, 1960.