[Civ. No. 34151. First Dist., Div. Two. Jan. 21, 1975.]

JEFFORY MORSHEAD et al., Plaintiffs and Appellants, v. CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, Defendant and Respondent.

**COUNSEL**

Saul M. Weingarten for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, and Roderick Walston, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**ROUSE, J.**—Plaintiffs identify themselves as taxpayers, property owners, developers and associations of builders. They appeal a superior court judgment[1] denying their petitions for writs of mandamus. By such petitions, they sought to restrain the enforcement of certain cease and desist orders issued by the California Regional Water Quality Control Board for the San Francisco Bay Region (hereinafter referred to as the "Regional Board.")

Pursuant to section 13263 of the Water Code, the Regional Board adopted water quality requirements for waste discharges which are pumped indirectly into the waters of the San Francisco Bay.[2] These waste discharges are directed into the bay by district or municipal dischargers who operate sewage treatment plants. After the Regional Board's water quality requirements were violated, the Regional Board, pursuant to section 13301 of the Water Code, issued separate cease and

[1]We are advised by the Attorney General that due to a clerical mistake, the trial court issued its judgment with respect to all actions except No. 636886; further, that plaintiffs compounded this mistake in their notice of appeal by omitting reference to action No. 636886. Since it appears that it was clearly the intention of the trial court to render judgment in all four cases and plaintiffs' intention to appeal in all four cases, we treat this appeal as including action 636886, together with actions Nos. 636884, 636885 and 636336.

[2]Section 13000 et seq. of the Water Code are known as the Porter-Cologne Water Quality Control Act. Section 13001 of this act provides, in pertinent part: "It is the intent of the Legislature that the state board and each regional board shall be the principal state agencies with primary responsibility for the coordination and control of water quality."

desist orders applicable to the Richardson Bay Sanitary District (order 71-33), the Mill Valley District (order 71-34) and Sanitary District No. 1, which operates a sewage treatment plant in Marin County (order 71-52). Each of these orders requires the dischargers, pursuant to prescribed time schedules set forth therein, to refrain from further violating the Regional Board's requirements and particularly to refrain from continuing to allow untreated sewage to be discharged into Richardson Bay and Corte Madera Creek. The orders also prohibit those districts from authorizing any further connections to their sewage treatment facilities, except as may be permitted by the Regional Board on the basis of corrective measures taken by the districts to reduce the overloading of their facilities.

The impact of the above orders is clear. Plaintiffs were prohibited from using their property in a manner which would require a sewer connection until the districts could meet the Regional Board's water quality requirements. The plaintiffs conceived these prohibitions as establishing a "building ban."

After the above orders were issued, the plaintiffs filed separate cases in the Marin County Superior Court seeking writs of mandamus to prevent their enforcement.

Upon the motion of defendant, and under the authority of section 13361, subdivision (b), of the Water Code, these separate cases were transferred to superior court in San Francisco. The cases were consolidated for trial and, following a hearing, the court denied the plaintiffs' petitions. Judgment was entered in favor of the defendant on September 5, 1973. From this judgment, plaintiffs appeal.

ISSUES

Plaintiffs contend that they were denied procedural due process by the Regional Board in that:

(a) they were not given proper notice of the hearing before the Regional Board, at which time the propriety of whether or not the cease and desist orders would issue was determined;

(b) they were not allowed to cross-examine and refute the Regional Board's evidence; and

(c) they were not allowed to present evidence as to how the proposed orders would act to create a situation of hardship for them.

Plaintiffs also contend that the Regional Board's issuance of the cease and desist orders actually amounts to inverse condemnation, for which compensation should be paid.

(a) *Notice.*

■ The trial court rejected plaintiffs' contention that they were not given proper notice of the Regional Board's hearing on the basis of its finding that the board provided due notice of the hearings on the cease and desist orders, either by publication or direct notification, to all persons affected by said orders.

It appears that the plaintiffs' contention is based upon the fact that a particular interest group, "The Citizens' Assistance League to Marin Sanitary Districts," was not given an individually mailed notice of the Regional Board's hearings.

We find no error in the trial court's determination. Defendant's Exhibit C provided substantial evidence for the trial court's decision that proper notice of the administrative hearings in question was provided the plaintiffs. A general notice of the board's hearing was published in a local newspaper, giving all those interested an opportunity to be heard. In addition, notices were sent to all individuals and agencies which had contacted the Regional Board indicating an interest in the hearings. Notices were also sent by certified mail to each of the dischargers, to the Marin Builders' Exchange, and to legal counsel for the California Builders Council. We conclude that the trial court was correct in ruling that there was proper notice given to the plaintiffs even though a particular unknown group was not given individual mailed notice.

(b) *Inability to cross-examine and refute the Regional Board's evidence issue.*

■ In further support of their procedural due process challenge, the plaintiffs contend that they were denied an opportunity to present their own evidence or cross-examine and refute evidence presented in support of the Regional Board's eventual determination. Such contention is without merit.

The record of proceedings had before the hearing panel of the Regional Board shows that, at the outset, the chairman advised all present that all relevant evidence which any person wished to have the panel consider had to be introduced at that hearing; further, that the panel would accept any evidence or testimony which was reasonably relevant to the issues. Finally, the chairman cautioned all present that no evidence could be introduced into the record at the meeting of the full Regional Board absent a satisfactory showing that such evidence could not reasonably have been produced at the panel hearing.

The trial court found that, at hearings before panels of the Regional Board which led to the issuance of the orders in question, all affected persons were given an opportunity to testify and present evidence. This finding is fully supported by the record in this case.

Further, defendant's Exhibit E-5 is replete with examples of plaintiffs' counsel being given every opportunity to cross-examine witnesses and Regional Board members. The record indicates that he availed himself of these opportunities.

(c) *Hardship evidence issue.*

■ Plaintiffs contend that they were denied the opportunity to submit evidence at the Regional Board hearing as to the hardship they would suffer as a result of the issuance of the cease and desist orders in question. They argue that they were in some way denied such an opportunity after they were told by the special hearing panel of the Regional Board that they could present this evidence.

On this point the trial court found that, notwithstanding the Regional Board's announced policy of excluding evidence of personal hardship at hearings before the panel, no such evidence was excluded in this instance and that, in fact, some evidence of hardship was admitted. The trial court concluded that it is not statutorily or constitutionally improper for the Regional Board to exclude evidence of personal hardship at hearings conducted by the panel or by the full Regional Board for the purpose of determining whether to issue a cease and desist order.

Here again, the record does not support plaintiffs' contention but does amply support the trial court's finding. It appears that the panel did not state that the plaintiffs could present specific evidence of hardship but

rather pointed out that hardship was considered by the Regional Board in making its final determination.

In fact, plaintiffs managed to present a considerable amount of hardship evidence in the form of Mr. Morshead's testimony before the panel. Not only did the panel and the Regional Board express a policy of considering the element of hardship before making a final decision, but it is clear from the record that, in this instance, they were provided with specific examples of how the proposed cease and desist orders would adversely affect certain individuals.

Even if the Regional Board decided to exclude evidence of hardship, there is substantial authority to support the trial court's decision that such exclusion was not improper.

Personal hardship invariably will result from a valid exercise of police power. "Every exercise of the police power is apt to affect adversely the property interest of somebody." (*Zahn* v. *Board of Public Works* (1925) 195 Cal. 497, 512 [234 P. 388]; *Wilkins* v. *City of San Bernardino* (1946) 29 Cal.2d 332, 338 [175 P.2d 542].) The test for the valid exercise of the police power is not a precise one. In *Lees* v. *Bay Area Air etc. Control Dist.* (1965) 238 Cal.App.2d 850, 857 [48 Cal.Rptr. 295], the court defines police power as " 'the power inherent in a government to enact laws, within constitutional limits, to protect the order, safety, health, morals and general welfare of society.' " The court went on to point out that, generally, the police power will be upheld if the act, ordinance or regulation is not arbitrary, unreasonable or discriminatory. In the exercise of its police power, "reasonableness" of a governmental action must be seen as related to how important or necessary its task is in protecting the public.

Here, plaintiffs do not challenge the validity of the government's interest in protecting the quality of the state's water. ■ Certainly, it cannot be denied that prevention of water pollution is a legitimate government objective in furtherance of which the police power may be exercised. (*Freeman* v. *Contra Costa County Water Dist.* (1971) 18 Cal.App.3d 404, 408 [95 Cal.Rptr. 852].) ■ In authorizing regional boards to impose a ban on sewer connections, the Legislature surely must have considered the economic consequences of such a prohibition but nonetheless concluded that these consequences are outweighed by the public's right to clean water and a better environment. We find no constitutional right to connect to a community water system if such

connection might constitute a menace to health or otherwise threaten to degrade the environment shared by the community as a whole. Thus, we conclude that, given the demonstrable interests of the state in protecting the health and welfare of the members of the community involved, the issuance of the challenged cease and desist orders was a reasonable exercise of the state's police power; further, that the Regional Board was entitled to exclude evidence of specific instances of hardship.

*Inverse condemnation issue.*

Finally, plaintiffs contend that the issuance of the Regional Board's cease and desist orders amounts to inverse condemnation, for which they should be compensated.

This contention is clearly without merit. Apparently, plaintiffs confuse an exercise of the police power with an exercise of the power of eminent domain. The constitutional guaranty of just compensation attached to an exercise of the power of eminent domain does not extend to the state's exercise of its police power, and damage resulting from a proper exercise of the police power is simply *damnum absque injuria.* (*Lees* v. *Bay Area Air etc. Control Dist., supra,* at p. 856, citing *Gray* v. *Reclamation District No. 1500* (1917) 174 Cal. 622, 639 [163 P. 1024].)

The police power of a state embraces regulations designed to promote the public health, the public morals or the public safety. Compensation has never been a condition of its exercise even when attendant with inconvenience or peculiar loss, as each member of a community is presumed to be benefited by that which promotes the general welfare. (*Gray* v. *Reclamation District No. 1500, supra,* at p. 642, citing *C. B. & Q. Railway* v. *Drainage Comm'rs.* (1906) 200 U.S. 561, 593 [50 L.Ed. 596, 609-610, 26 S.Ct. 341].) While in some cases the distinction between a valid exercise of police power and the taking or damaging of private property for which compensation is required is not clear-cut, yet, for reasons set forth above, we hold that, in this instance, the issuance by the Regional Board of cease and desist orders, including the ban on connections, did not constitute an inverse condemnation of plaintiffs' property.

After a thorough review and consideration of the record in this case, this court fails to find any basis for plaintiffs' contention that they were denied procedural due process. We find, instead, that they were fully afforded their day in court and that, under the rules set forth in section

1094.5 of the Code of Civil Procedure and those relevant sections of the Porter-Cologne Water Quality Control Act, the trial court was not in error in affirming the administrative orders of the Regional Board.

The judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied February 20, 1975, and appellants' petition for a hearing by the Supreme Court was denied April 24, 1975. Clark, J., was of the opinion that the petition should be granted.