[No. G012337. Fourth Dist., Div. Three. Dec. 17, 1993.]

JOE BROWN et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Nicolas Ferrara for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, Robert H. Francis and Barbara A. Noble, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**SONENSHINE, J.**—Joe Brown appeals the trial court's dismissal of his complaint for inverse condemnation against the State of California (State). The action was dismissed after the court sustained the State's demurrer without leave to amend.

I

*Factual Background*

In October 1990, Joe Brown filed suit against, inter alia, the State for inverse condemnation. Holding promissory notes secured by deeds of trust

on portions of what is now known as the McColl Superfund Site,[1] he alleged the State took "exclusive possession and use of said property with an alleged plan devised to remove said waste, sludge and odor, or the effects thereof, for public use and benefit and not for any private purpose." He continued: "For more than ten years last past [the State has] taken and now take[s] exclusive possession and use of said real property to the exclusion of plaintiffs and [has] deprived plaintiffs of their rights, title and interest in said real property arising out of and flowing from their deeds of trust in that" (1) the trust deeds are in default, (2) foreclosure would be futile, (3) the owners have abandoned the property, (4) the tax collector has refused to abate the taxes, unpaid by the owners, but covered by the plaintiffs, (5) self-purchase at foreclosure is futile because no use can be made of the property and they would be subject to cleanup costs, (6) the property has now been sold to the State for nonpayment of taxes,[2] and (7) the property has effectively been inversely condemned because the State has taken exclusive use, excluded the plaintiffs and the alleged owners, and "also ha[s] commenced, but never completed, their activity for a public use and benefit."

The State filed its demurrer in September 1991, claiming the action was untimely and failed to state a cause of action because the property was taken, if at all, under the police power. Following a December hearing, the court took the matter under submission. On February 18, 1992, the court sustained the State's demurrer without leave to amend, dismissed the action and entered judgment for the State.

II

*Statutory Basis for the Cleanup*

National concern for environmental dangers engendered by disposal of hazardous waste materials resulted in congressional enactment of CERCLA.

---

[1] This private property is contaminated with hazardous wastes. Cleanup activities have been undertaken by the State pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 United States Code section 9601 et seq., and the Hazardous Substance Account Act (HSAA), Health and Safety Code section 25300 et seq. The State tells us the "Site is ranked number 447 of 1045 hazardous waste sites on the CERCLA National Priorities List for cleanup." To date of the complaint, the costs for studies and cleanup were "$15,000,000 by the United States and $3,745,378 by the State of California."

The latter costs are the subject of a suit by the United States and the State in federal court, seeking reimbursement against a series of defendants (including owners and corporations arranging for the original disposal of the waste materials). Prior to filing this opinion, judgment was entered for the plaintiffs. The court specifically found the governments' cost recovery actions were not an unconstitutional taking.

[2] This allegation is apparently untrue. No titles (transferred to the State for tax deficiencies) have been issued to the State since 1984. Prior titles were relinquished to the owners of record.

The act mandates cleanup procedures whenever, inter alia, "there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare . . . ." (42 U.S.C. § 9604(a).) California has addressed the same issues in the Health and Safety Code, establishing a cleanup program for areas found to be contaminated by hazardous waste materials: "It is the intent of the Legislature to: [¶] Establish a program to provide response authority for releases of hazardous substances, including spills and hazardous waste disposal sites that pose a threat to the public health or environment." (Health & Saf. Code, § 25301, subd. (a).)

Such a situation presented itself at the site in issue. The State undertook to remedy the threat when the property owners abandoned the property rather than assume responsibility for the cleanup. Brown, and others holding trust deeds on the property, now attempt to hold the State responsible for the loss of their lien values, claiming inverse condemnation. The State, on the other hand, claims it is statutorily empowered to undertake the cleanup actions, a valid exercise of its police power to protect the public health; it is thus immune from liability.

### III

### *Inverse Condemnation*

■ An action in inverse condemnation derives from article I, section 19 of the California Constitution, requiring "just compensation be paid when private property is taken or damaged for public use. [Citation.]" (*Yox* v. *City of Whittier* (1986) 182 Cal.App.3d 347, 351 [227 Cal.Rptr. 311].) " 'To make a use public in character, a duty must fall on the person or corporation holding the property appropriated by eminent domain to furnish the public with the *use* intended and the public must be entitled to *use or enjoy the property taken.*' [Citation.]" (*Id.* at p. 352, italics added.)[3] ■ There was no intended use or enjoyment by the public. The State entered the land to undertake cleanup procedures for the health and safety of the surrounding residents. Once accomplished, neutralization of the extant danger will render the property usable by its owners.

■ In any event, a relevant exception to recovery under inverse condemnation involves a situation like that "in (1) *Gray* v. *Reclamation Dist. No.*

---

[3]The only significant difference between inverse condemnation and eminent domain is that in eminent domain ". . . the public authority takes the initiative whereas in [inverse condemnation] it is the property owner who commences litigation." (*Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39, 43 [104 Cal.Rptr. 1, 500 P.2d 1345].)

*1500*, 174 Cal. 622 [163 P. 1024], where it was held that damage resulting from a legitimate exercise of the state's police power (in that case, flood control, navigational improvement, and reclamation work) is noncompensable provided the 'proper limits' of that power have not been exceeded . . . ." (*Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720, 732 [84 Cal.Rptr. 11]; *Farmers Ins. Exchange* v. *State of California* (1985) 175 Cal.App.3d 494, 501 [221 Cal.Rptr. 225] ["Damages inflicted in the course of a proper exercise of the state's police power are noncompensable."].) And "[a] government's action will be upheld as a valid exercise of police power if it is 'reasonably necessary to "protect the order, safety, health, morals, and general welfare of society." [Citations.]' " (*Farmers Ins. Exchange* v. *State of California*, *supra*, 175 Cal.App.3d 494, 501.) That is precisely what occurred here. In tandem with federal authority, the Legislature has established a program for cleanup of "hazardous waste disposal sites that pose a *threat to the public welfare* or the environment." (Health & Saf. Code, § 25301, subd. (a), italics added.) ■ The State's actions fall squarely within the definition of police power. Its interest in protecting the surrounding residents from injury arising from the hazardous waste and resulting pollutants, and in protecting the underground aquifers from contamination is surely "a legitimate government objective in furtherance of which the police power may be exercised." (*Morshead* v. *California Regional Water Quality Control Bd.* (1975) 45 Cal.App.3d 442, 449 [119 Cal.Rptr. 586].)[4] "Compensation has never been a condition of its exercise even when attendant with inconvenience or peculiar loss, as each member of a community is presumed to be benefited by that which promotes the general welfare." (45 Cal.App.3d at p. 450.) "It cannot be denied that prevention of water pollution is a legitimate governmental objective, in furtherance of which the police power may be exercised." (*Freeman* v. *Contra Costa County Water Dist.* (1971) 18 Cal.App.3d 404, 408 [95 Cal.Rptr. 852].)

■ There is also the issue of the statute of limitations. Whether the three- or ten-year statute applies, the action appears untimely. On its face,

---

[4]Brown's extensive quotations from *Rose* v. *City of Coalinga* (1987) 190 Cal.App.3d 1627 [236 Cal.Rptr. 124], in addition to being taken out of context, are inapt. There, following an earthquake, the city destroyed a building belonging to the plaintiff. The case addressed the special situation where a government entity "intentionally destroys an owner's property in the absence of an emergency and compelling necessity and without according to the owner due process." (*Id.* at p. 1634.) " 'In such cases calling for immediate action the emergency constitutes full justification for the measures taken to control the menacing condition . . . .' " (*Ibid.*) In *Rose*, there remained issues as to whether a true emergency existed, to justify the action, and whether consent to demolish was voluntary.

That is not our situation. There is no dispute that (1) the area is contaminated, (2) there is considerable risk to the public and the environment, and (3) cleanup is necessary. Moreover, full justification for the measures undertaken by the State and the United States derives from state and federal statutes, mandated " 'for the protection of the public health or safety. . . .' " (*Rose*, *supra*, 190 Cal.App.3d at p. 1634.)

the complaint acknowledges the State's entrance on the land occurred *10 years ago*: "For more than ten years last past the defendants . . . have taken and now take exclusive possession and use of said real property to the exclusion of plaintiffs and deprived plaintiffs of their rights, title and interest . . . ." (See *Ocean Shore R. R. Co.* v. *City of Santa Cruz* (1961) 198 Cal.App.2d 267 [17 Cal.Rptr. 892] [applying a three-year statute]; *Podesta* v. *Linden Irr. Dist.* (1956) 141 Cal.App.2d 38 [17 Cal.Rptr. 892] [applying a five-year statute.) Brown's opening brief concedes the alleged damages occurred outside the statutory period: "Plaintiffs' deeds of trust have been impaired since State took possession of the land ten years ago."

Brown attempts to sidestep the issue by suggesting the State's activities are essentially a continuing nuisance, making the statutes of limitation inapplicable. First, there was no cause of action for nuisance and no governmental claim for one filed. "The only question here is [State's] liability under a theory of inverse condemnation. Plaintiffs have not sought, and cannot at this point seek, damages from [State] on a tort theory. [T]he pleadings show that plaintiffs have not complied with the governmental claims requirement." (*Yox* v. *City of Whittier, supra*, 182 Cal.App.3d 347, 352, fn. 3.) Second, ". . . acts done pursuant to express statutory authority are by definition not a nuisance. . . . The authorizing statute need not predict the precise nature of the damages. It need only authorize the government action." (*Farmers Ins. Exchange* v. *State of California, supra*, 175 Cal.App.3d 494, 503.)

IV

*Grounds for Sustaining the Demurrer*

■ The order sustaining the demurrer and dismissing the action does not state the court's reasons for its determination. (Code Civ. Proc., §§ 472c, 472d.) "It must be considered harmless error, however, absent a demonstration of prejudice to plaintiff. [Citation.] The requirement of stated grounds is very useful as a guide when plaintiff wishes and is able to amend the complaint, but on appeal its importance is minimal since the ruling will be upheld on any sufficient ground, whether relied on by the court below or not. [Citation.]" (*Wheeler* v. *County of San Bernardino* (1978) 76 Cal.App.3d 841, 846, fn. 3. [143 Cal.Rptr. 295]) Moreover, "petitioners waived such irregularity by failing to call it to the attention of the court." (*Cohen* v. *Superior Court* (1966) 244 Cal.App.2d 650, 655 [53 Cal.Rptr. 378], fn. omitted.)

Judgment affirmed. Respondent shall recover costs on appeal.

Wallin, Acting P. J., and Crosby, J., concurred.

A petition for a rehearing was denied January 4, 1994, and appellants' petition for review by the Supreme Court was denied March 17, 1994. Baxter, J., and George, J., were of the opinion that the petition should be granted.