[No. G028308. Fourth Dist., Div. Three. Sept. 26, 2002.]

JAMES MASSINGILL et al., Plaintiffs and Appellants, v.
DEPARTMENT OF FOOD AND AGRICULTURE et al., Defendants and
Respondents.

**COUNSEL**

Sterling Scott Winchell for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Mary E. Hackenbracht, Assistant Attorney General, and William S. Abbey, Deputy Attorney General, for Defendants and Respondents.

## OPINION

FYBEL, J.—In 1999, the Legislature amended Business and Professions Code section 13651 (effective Jan. 1, 2000) to require gasoline service stations to provide water, compressed air, and an air pressure gauge "at no cost to customers who purchase motor vehicle fuel . . . ." (Assem. Bill No. 531 (1999-2000 Reg. Sess.), enacted as Stats. 1999, ch. 583, § 2, amending Bus. & Prof. Code, § 13651, subd. (a)(1).) Plaintiffs are service station owners, vendors of water and compressed air machines, and persons with interests in those businesses. They assert the Legislature's amendment of section 13651 (referred to as amended section 13651) was an invalid exercise of the state's police power and effectuated, through the power of eminent domain, an unconstitutional regulatory taking of their property for public use without just compensation.

We conclude amended section 13651 is a valid exercise of the state's police power. We also conclude amended section 13651 does not effectuate an unconstitutional taking of plaintiffs' property. Accordingly, we affirm summary judgment in favor of the State of California and the California Department of Food and Agriculture, Division of Measurement Standards (the State).

### FACTS AND PROCEEDINGS BELOW

In 1984, the Legislature enacted Business and Professions Code section 13651 (all further code references are to the Business and Professions Code), which required all gasoline service stations in California to provide water, compressed air, and an air pressure gauge during operating hours. The statute was silent on whether fees could be charged for those services. Service stations soon began providing water and compressed air, as section 13651 required, but often for a fee—usually 25 cents for three minutes of compressed air.

The Legislature responded in 1999 by enacting Assembly Bill No. 531, effective January 1, 2000, which amended section 13651 to require service stations to provide water, compressed air, and an air pressure gauge "at no cost to customers who purchase motor vehicle fuel . . . ." (Assem. Bill No.

531 (1999-2000, Reg. Sess.), enacted as Stats. 1999, ch. 583, § 2, amending Bus. & Prof. Code, § 13651, subd. (a)(1).) Each violation carries a $250 fine. (§ 13651, subd. (d)(2).) Amended section 13651 also requires service stations to post near the water or air dispenser a sign stating: " 'CALIFORNIA LAW REQUIRES THIS STATION TO PROVIDE FREE AIR AND WATER FOR AUTOMOTIVE PURPOSES TO ITS CUSTOMERS WHO PURCHASE MOTOR VEHICLE FUEL. IF YOU HAVE A COMPLAINT NOTIFY THE STATION ATTENDANT AND/OR CALL THIS TOLL-FREE TELEPHONE NUMBER . . . .' " (§ 13651, subd. (a)(2).)

In amending section 13651, the Legislature found and declared that "air and water are essential to the safe operation of motor vehicles, and therefore public safety requires that free air and water be accessible at all service stations." (Assem. Bill No. 531 (1999-2000 Reg. Sess.), enacted as Stats. 1999, ch. 583, § 1.)

Plaintiffs consist of three groups: (1) independent service station owners, (2) vendors of water and compressed air machines, and (3) persons with "interests" in those businesses. They sued to enjoin enforcement of amended section 13651 and for a declaration "of the constitutionality, or lack thereof, of the amendments to Business and Professions Code Section 13651 . . . ." Plaintiffs moved for summary judgment on the following grounds: (1) amended section 13651 is an unconstitutional exercise of the state's police power, and (2) amended section 13651 is an unconstitutional taking of property for public use through eminent domain. The State opposed, and the parties stipulated the State's opposition be deemed a cross-motion for summary judgment.

After a hearing, the trial court denied plaintiffs' motion and granted the State's motion. The order granting summary judgment states: "1. There are no material facts in dispute. [¶] 2. The enactment of the statute at issue was a valid exercise of the police power by the state legislature. [¶] 3. The enactment of the statute was a valid business regulation. [¶] 4. The enactment of the statute did not constitute a violation of due process. [¶] 5. The statute does not effect a taking in eminent domain and is therefore not unconstitutional."

On September 29, 2000, the State served a "Notice Of Entry Of Judgment," attaching the order granting summary judgment. No "judgment" appears in the record. On November 22, plaintiffs filed a "Notice of Appeal of *Order Granting* Defendants' Cross-motion for Summary Judgment." (Italics added.) To preserve appellate jurisdiction, we will construe the order

granting summary judgment as a judgment and plaintiffs' notice of appeal as being from that judgment. ■ We review summary judgment de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68 [99 Cal.Rptr.2d 316, 5 P.3d 874]; *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001 [67 Cal.Rptr.2d 483].)

## DISCUSSION

### I.

*Amended Section 13651 Is a Valid Exercise of the State's Police Power*

■ Plaintiffs contend amended section 13651 constitutes an unconstitutional exercise of the state's police power. ■ The police power is "the power of sovereignty or power to govern—the inherent reserved power of the state to subject individual rights to reasonable regulation for the general welfare." (8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 784, p. 311.) The police power extends to legislative objectives in furtherance of public peace, safety, morals, health and welfare. (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 160 [130 Cal.Rptr. 465, 550 P.2d 1001].)

Whether a law is a constitutional exercise of the police power is a judicial question. (*McKay Jewelers, Inc. v. Bowron* (1942) 19 Cal.2d 595, 600 [122 P.2d 543, 139 A.L.R. 1188].) A law is a valid exercise of the police power unless the law is manifestly unreasonable, arbitrary or capricious, and has no real or substantial relation to the public health, safety, morals or general welfare. (*Amezcua v. City of Pomona* (1985) 170 Cal.App.3d 305, 309-310 [216 Cal.Rptr. 37]; see also *Birkenfeld v. City of Berkeley, supra,* 17 Cal.3d at p. 159; *McKay Jewelers, Inc. v. Bowron, supra,* 19 Cal.2d at pp. 600-601; *Advanced Delivery Service, Inc. v. Gates* (1986) 183 Cal.App.3d 967, 976 [228 Cal.Rptr. 557].)

A law is presumed to be a valid exercise of police power. The party challenging the law has the burden of establishing it does not reasonably relate to a legitimate government concern. (*Hesperia Land Development Co. v. Superior Court* (1960) 184 Cal.App.2d 865, 870 [7 Cal.Rptr. 815].)

■ Amended section 13651 is a valid exercise of the Legislature's police power. There can be no doubt in the truth of the Legislature's declaration that "air and water are essential to the safe operation of motor vehicles." Plaintiffs conceded that proposition at oral argument. It is a reasonable deduction that motorists are more likely to keep their automobile

tires properly inflated and coolant systems filled with water if water and compressed air are offered at all service stations free of charge, however slight that charge might have been. The means chosen by the Legislature— free water and compressed air—are reasonably designed to achieve the desired end—safe operation of motor vehicles. (See *Hesperia Land Development Co. v. Superior Court, supra*, 184 Cal.App.2d at p. 870.) Amended section 13651 is therefore substantially reasonably related to the goal of public health and safety, and is not unreasonable, arbitrary or capricious.

II.

*Amended Section 13651 Does Not Effectuate an Unconstitutional Taking of Plaintiffs' Property*

A.

Plaintiffs contend amended section 13651 is an unconstitutional regulatory taking through eminent domain. They argue that by amending section 13651, the Legislature "took, for the public use and benefit, the . . . pre-existing property right of the Appellants to charge a fee for the use of their [compressed air and water] vending machines." Although plaintiffs did not plead a cause of action for eminent domain, the complaint does seek "[a] judicial determination of the constitutionality, or lack thereof, of the amendments to Business and Professions Code Section 13651 . . . ," and this request is broad enough to include an unconstitutional taking claim. Further, a party challenging a regulation as a taking may bring an action to set aside or void the regulation without joining a claim for damages. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 14 [32 Cal.Rptr.2d 244, 876 P.2d 1043].)

The takings clauses of the federal and state Constitutions guarantee property owners "just compensation" when their property is taken for public use. (U.S. Const., 5th Amend; Cal. Const., art. I, § 19.) "The purpose of forbidding uncompensated takings of private property for public use is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" (*Connolly v. Pension Benefit Guaranty Corp.* (1986) 475 U.S. 211, 227 [106 S.Ct. 1018, 1027, 89 L.Ed.2d 166] (*Connolly*).)

A regulation of economic interests which "'goes too far'" may become a "taking" even though the property remains in private hands. (*Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 773 [66 Cal.Rptr.2d 672, 941 P.2d 851] (*Kavanau*); *Blue Jeans Equities West v. City and County*

*of San Francisco* (1992) 3 Cal.App.4th 164, 168 [4 Cal.Rptr.2d 114]; see generally *Pennsylvania Coal Co. v. Mahon* (1922) 260 U.S. 393, 415 [43 S.Ct. 158, 160, 67 L.Ed. 322, 28 A.L.R. 1321].) ▇ The property owner may bring an inverse condemnation action and, if successful, the regulatory agency must either withdraw the regulation or pay just compensation. (*Kavanau, supra*, 16 Cal.4th at p. 773.) "Inverse condemnation damages can only 'be recovered for a "regulatory taking," i.e., a governmental regulation which exceeded the police power to the extent it allowed for the taking of private property without payment of fair compensation.'" (*Golden Cheese Co. v. Voss* (1991) 230 Cal.App.3d 727, 735 [281 Cal.Rptr. 602].)

B.

▇ The State asserts any taking caused by amended section 13651 is noncompensable because it results from a valid exercise of the police power. In support, the State cites our decision in *Brown v. State of California* (1993) 21 Cal.App.4th 1500 [26 Cal.Rptr.2d 687], as well as *Morshead v. California Regional Water Quality Control Bd.* (1975) 45 Cal.App.3d 442 [119 Cal.Rptr. 586], *Farmers Ins. Exchange v. State of California* (1985) 175 Cal.App.3d 494 [221 Cal.Rptr. 225], and *Air Quality Products, Inc. v. State of California* (1979) 96 Cal.App.3d 340 [157 Cal.Rptr. 791]. ▇ These cases suggest, as *Morshead* states, "[t]he constitutional guaranty of just compensation attached to an exercise of the power of eminent domain does not extend to the state's exercise of its police power, and damage resulting from a proper exercise of the police power is simply *damnum absque injuria*." (*Morshead v. California Regional Water Quality Control Bd., supra*, 45 Cal.App.3d at p. 450.)

However, the California Supreme Court has held "this doctrine of noncompensable loss comes into play in connection with more direct 'taking' or 'damaging' of property only under 'emergency' conditions; i.e., when damage to private property is inflicted by government 'under the pressure of public necessity and to avert impending peril.'" (*Holtz v. Superior Court* (1970) 3 Cal.3d 296, 305 [90 Cal.Rptr. 345, 475 P.2d 441].) Thus, "[t]he emergency exception is limited. It operates to avert impending peril." (*Los Osos Valley Associates v. City of San Luis Obispo* (1994) 30 Cal.App.4th 1670, 1680 [36 Cal.Rptr.2d 758]; see also *Customer Co. v. City of Sacramento* (1995) 10 Cal.4th 368, 383-385 [41 Cal.Rptr.2d 658, 895 P.2d 900] [applying exception to damage caused by police officers' apprehension of suspect]; 8 Witkin, Summary of Cal. Law, *supra*, Constitutional Law, § 950, p. 507 ["The scope of this exception, however, is limited to 'emergency' situations where there is a public necessity to avert an impending peril"].)

We disapprove *Brown v. State of California, supra,* 21 Cal.App.4th 1500 to the extent it holds otherwise.

Amended section 13651 was not enacted in the face of an emergency or to avert impending peril. Our conclusion that amended section 13651 is a valid exercise of the police power therefore does not resolve the issue whether it has resulted in a compensable taking under the federal or state Constitution. (See *Kavanau, supra,* 16 Cal.4th at p. 772; *Cwynar v. City and County of San Francisco* (2001) 90 Cal.App.4th 637, 663-666 [109 Cal.Rptr.2d 233] ["even if . . . Proposition G substantially advances legitimate state interests, plaintiffs could still show that this regulation constitutes a regulatory taking"]; *Golden Cheese Co. v. Voss, supra,* 230 Cal.App.3d at p. 735 ["even though a . . . regulation may be valid, it can also amount to a taking"].)

## C.

### 1.

In analyzing when a regulation goes " 'too far' " and effects a taking, the United States Supreme Court has identified "two discrete categories of regulatory action" that constitute takings without the necessity of weighing the public interest advanced in support of the restraint. Those "per se" takings are: (1) where the property owner has suffered a physical invasion of his property and (2) where the regulation denies all economically beneficial or productive use of land. (*Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1015 [112 S.Ct. 2886, 2893, 120 L.Ed.2d 798].)

Outside of those two per se takings, whether a regulation constitutes a taking must be analyzed under several factors. The California Supreme Court in *Kavanau* explained: "When a regulation does not result in a physical invasion and does not deprive the property owner of all economic use of the property, a reviewing court must evaluate the regulation in light of the 'factors' the high court discussed in *Penn Central* [*Transp. Co. v. New York City* (1978) 438 U.S. 104 [98 S.Ct. 2646, 57 L.Ed.2d 631]] and subsequent cases. *Penn Central* emphasized three factors in particular: (1) '[t]he economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' " (*Kavanau, supra,* 16 Cal.4th at p. 775.)

*Kavanau* distilled from United States Supreme Court precedent the following 10 additional factors: (1) whether the regulation interferes with interests that are sufficiently bound up with the reasonable expectation of the

claimant to constitute property for Fifth Amendment purposes; (2) whether the regulation affects the existing or traditional use of the property and thus interferes with the owner's primary expectation; (3) the nature of the state's interest in the regulation, in particular, whether the regulation is " 'reasonably necessary to the effectuation of a substantial public purpose' "; (4) whether the property owner's holding is limited to the specific interest the regulation abrogates or is broader; (5) whether the government is acquiring resources to permit or facilitate uniquely public functions, such as government's " 'entrepreneurial operations' "; (6) whether the regulation permits the property owner to profit and obtain a reasonable return on investment; (7) whether the regulation provides the property owner benefits or rights that mitigate whatever financial burdens the law has imposed; (8) whether the regulation prevents the best use of the land; (9) whether the regulation extinguishes some fundamental attribute of ownership; and (10) whether the government is demanding the property as a condition for the granting of a permit. (*Kavanau, supra*, 16 Cal.4th at pp. 775-776.)

The list is not comprehensive, and the factors should be applied as appropriate rather than used as a checklist. (*Kavanau, supra*, 16 Cal.4th at p. 776.) The Supreme Court has "eschewed the development of any set formula for identifying a 'taking' forbidden by the Fifth Amendment, and [has] relied instead on ad hoc, factual inquiries into the circumstances of each particular case." (*Connolly, supra*, 475 U.S. at p. 224 [106 S.Ct. at p. 1026].) We therefore turn to the facts and circumstances of this case.

## 2.

The service station owner plaintiffs assert a different takings claim from that asserted by the vendor plaintiffs. We discuss the claims separately, starting with the vendors'.

### a.

The vendors challenge amended section 13651 on the ground that "[b]y prohibiting these businesses from charging for the only product/service they offer, the Government has singled out that industry for extinction." The evidence submitted below does not support that assertion.

The only evidence offered in support of the vendors' eminent domain theory was the declaration of Sue Claypoole, the general manager and operator of Mass Air Systems, a provider of air vending machine service. She concluded, "[b]ased upon my knowledge of the business," Mass Air "will not survive as a business" if amended section 13651 is enforced

because "[a] substantial portion of the income of our business is derived from gasoline customers, which income we will totally lose when this law takes effect."

It is true Mass Air no longer will receive quarters directly from motor fuel purchasers, but that does not mean Mass Air's income will dry up. Amended section 13651 does not prevent Mass Air from renting or selling its compressed air machines directly to service station operators. Amended section 13651 does not result in a physical invasion or appropriation of the vendors' compressed air machines, and does not deny all economically beneficial or productive use of those machines (*Lucas v. South Carolina Coastal Council, supra*, 505 U.S. at p. 1015 [112 S.Ct. at p. 2893]), and therefore is not a per se taking as to the vendors.   ·

Amended section 13651 is not a taking as to the vendors under the factors we should consider under *Kavanau* and *Penn Central Transp. Co. v. New York City, supra*, 438 U.S. 104 (*Penn Central*). Claypoole testified amended section 13651 would have an economic impact on Mass Air by (1) requiring it to create a new billing system if the company were to rent compressed air machines, and (2) requiring it to have special tokens minted in order to make Mass Air's machines vend free air. Under the first *Penn Central* factor, such inconvenience and incidental expense do not rise to a taking of property compensable under the federal or state Constitution. (See *Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 886 [50 Cal.Rptr.2d 242, 911 P.2d 429].) Further, Mass Air can recoup the cost of the tokens by selling them to the service stations, and can recoup both the cost of the tokens and extra billing expenses by incorporating those costs into the rental price for the compressed air machines.

As to the second *Penn Central* factor, Claypoole did not explain how amended section 13651 interferes with " 'distinct investment-backed expectations' " other than her unsubstantiated prediction of economic doom. The third *Penn Central* factor is the character of the governmental action involved. Here, as noted above, the government action did not physically invade or appropriate the vendor plaintiffs' property. (See *Connolly, supra*, 475 U.S. at p. 225 [106 S.Ct. at p. 1026]; *Golden Cheese Co. v. Voss, supra*, 230 Cal.App.3d at pp. 738-739.)

In addition, amended section 13651 is reasonably necessary to effectuate a substantial public purpose, does not deny Mass Air a means (through rental or sale of machines) to obtain a reasonable return on its investment, and does not extinguish any fundamental attribute of ownership.

b.

The service station owners complain that amended section 13651 takes away their ability to recover the cost of water and compressed air. They assert amended section 13651 "took, for the public use and benefit, the . . . preexisting property right of the Appellants to charge a fee and generate revenue from the use of their vending machines."

The legal underpinning for this takings claim is the language in amended section 13651, which requires service stations to provide water, compressed air, and an air pressure gauge "at no cost to customers who purchase motor vehicle fuel . . . ." (§ 13651, subd. (a)(1).) The term "at no cost," the service station owners say, precludes them from recovering the cost of water and compressed air by raising prices for other services and products. If service stations raised gasoline prices to recoup the cost of water and compressed air, this increased price would, in the owners' view, constitute a "charge" prohibited by amended section 13651. In contrast, the owners argue, when the Legislature amended subdivision (b) of section 13651 in 1990 to require certain service stations to provide restrooms at no charge, it chose the language, "[s]ervice stations shall not charge customers *separately* for the use of restroom facilities." (§ 13651, subd. (b)(1), italics added.) The service station owners argue this language only prohibits a specific separate charge for restrooms, and permits service stations to recover the cost of [^l] restrooms through pricing of gasoline and other products and services.

At oral argument, the Attorney General conceded amended section 13651 does not prevent service station owners from raising prices for other services and products in order to recover the cost of water and compressed air. The Attorney General's concession, which we treat as binding on the State in the future as well as in this case, should ease the service station owners' concerns and resolve any takings claim. But if amended section 13651 did prohibit service stations from recovering the cost of free water and compressed air through pricing of other products and services, we would conclude nonetheless the service station owner plaintiffs have failed to produce evidence of a per se taking or a taking under the *Penn Central* and *Kavanau* factors.

Plaintiffs' separate statement in support of summary judgment is surprisingly bare of any evidence regarding amended section 13651's effect on service station operators. Plaintiffs' undisputed fact No. 5 states: "Up until January 1, 2000, plaintiffs had a contractual right to charge any user a fee for the use of their air/water vending machines. Now . . . these

business[es] cannot charge motor fuel purchasing customers any fee." The evidence cited in support of this undisputed fact is Claypoole's declaration, which pertains only to the *vendor* plaintiffs.

██ All material facts must be set forth in the separate statement. (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337 [282 Cal.Rptr. 368].) " 'This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, *it does not exist.* ' " (*Ibid.*) ██ Plaintiffs failed to include in their separate statement any citations to evidence showing a taking as to the service station owners. The declaration of Michael Engle is the only evidence submitted regarding amended section 13651's impact on the service station operators, but that declaration is not cited in the separate statement as support for the proposition amended section 13651 results in an unconstitutional taking as to the service station owners.

Even if we were to consider Engle's declaration, we would affirm. Engle owns and operates a service station and subscribes to Mass Air's air vending services. According to Engle, Mass Air installs and maintains compressed air machines on his business premises at no charge to him. Mass Air charges service station customers 25 cents for every three minutes of compressed air and shares 35 percent of this revenue with Engle. He claims that as a result of amended section 13651, "I will now be required by law to give away free compressed air and water to gasoline customers who come on to my property, whereas up to now I have been able to charge for this." Engle declares he has been "informed" that amended section 13651 will put Mass Air out of business and as a result he will have to incur the expense of obtaining, installing, and maintaining compressed air machines. The result, Engle concludes, is "my business will not survive if this new law is enforced."

Engle's belief Mass Air will go out of business is speculation, and his declaration fails to set forth facts establishing enforcement of amended section 13651 will put him out of business as well. Indeed, the declaration lacks any evidence about the impact of amended section 13651 on Engle's business—other than the fact it presumably will cost him some unspecified amount of money and he will lose some unspecified amount of revenue from the compressed air machines. Even if considered, the declaration fails to provide facts establishing amended section 13651 has an economic impact on the service station operators that constitutes either a per se taking or a regulatory taking under the *Penn Central* and *Kavanau* factors.

## 3.

The evidence submitted established that amended section 13651 does not effectuate an unconstitutional taking of plaintiffs' property. By amending section 13651, the Legislature "adjust[ed] the benefits and burdens of economic life to promote the common good . . . ." (*Connolly, supra,* 475 U.S. at p. 225 [106 S.Ct. at p. 1026].) The trial court therefore was correct in denying plaintiffs' motion for summary judgment and granting the State's cross-motion.

### DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.